(Decided July 21st, 1858.)

---

## Charles B. Hanson & Wife, and Wm. B. Nelson & Wife, *vs.* John T. Worthington and others.

A testator bequeathed $10,000 to a trustee, who was also one of his executors, to be put at interest, or invested in stocks, and to be held *in trust*, to apply the income to the support of the testator's wife *during her life*, and, *after her death*, he gave and bequeathed said sum and the securities in which it may have been invested, to the children of his daughter Mary. He further directed that the power of thus putting at interest, and in-

vesting, and of selling and *reinvesting*, as often as the trustee deemed expedient, should be a *continuing* power during the requisite continuance of the trust. The wife *renounced* the provisions of this will. HELD:

1st. That by such *renunciation* the rights and interests of the *legatees in remainder* were not affected; the estate in remainder was *vested* in such legatees, and the renunciation only struck from the will the bequest to the wife.

2nd. The trust thus created and vested in the trustee, was not limited to the *life of the wife*, but was a *continuing*, *subsisting trust after her death* for the parties in remainder, and the trustee could only be discharged from his obligation by payment of the fund to them.

3rd. The executor and trustee having, under a mistake as to the effect of this renunciation, settled up the estate, and wrongfully paid this legacy to the residuary legatees, both *he* and *they* are responsible to the *cestuis que trust* therefor, the former *primarily*, and the latter *ultimately*.

4th. Limitation is no bar to this claim, and, under the circumstances of the case, there has been no such lapse of time, or laches and delay in making the claim, nor acquiescence and concurrence in the settlement of the estate and distribution of the fund, as will bar the complainants of their equitable relief.

5th. The parties who wrongfully received the legacy, being bound to refund the same, having taken it *subject to the trust*, and they, as well as the trustee, being alive and in court, upon a bill filed by the *cestuis que trust* against *all of them*, the decree, while providing for payment to the complainants, will also give the trustee relief over against his co-defendants.

6th. The complainants are entitled to *interest* on the principal sum due them for this legacy, from the time the same was wrongfully paid to the residuary legatees, but several payments having been made through a period of years, it should be counted, under the circumstances of the case, only from the date of the *last payment*.

Where a trust is created by a will in a party who is also executor, the probate of the will, and taking out letters testamentary thereon, by such party, are *sufficient evidence* of the *acceptance* of the trust.

Where a party has once fixed himself by any means with the acceptance of a trust, he cannot afterwards, *by disclaimer*, renounce or repudiate the duties and responsibilities of the office.

Where the subject of a trust is *personal estate*, the whole legal interest is in general vested in the trustee by a gift, without any words of limitation, and will continue in him till divested by a legal transfer or assignment.

Where a party is *sole* executor, and also a trustee, the fund will, by operation of law, be considered in his hands *as trustee*, after the time limited for the settlement of the estate, and where there are two executors, and one dies, the same principle applies to the *survivor*.

Hanson & Wife, *et al.*, *vs.* Worthington, *et al.*

A *release* executed by a female infant to her guardian, after attaining the age of eighteen, is, if *bona fide* made, a good acquittance to the guardian, but cannot discharge from liability a third party holding funds as her trustee, which were never paid or transferred to the guardian.

A release discharging an *executor* from the sums due to the parties releasing, *as residuary legatees*, cannot operate to discharge him from his liability as trustee for a *specific legacy* bequeathed to him *in trust* for the benefit of the same parties executing the release.

What lapse of time and laches are sufficient to bar the right of parties to recover on a claim *purely equitable*, depends upon the particular facts and circumstances of each case.

Proceedings of an executor in the orphans court, in reference to the distribution of the estate, made *ex-parte*, there being no appointment of a meeting of claimants, as provided by the testamentary act, and no order of the court directing the distribution, are not *conclusive* upon any party affected thereby.

Where a party equally entitled with the complainants to a legacy claimed by the bill, is made a defendant, and by his answer disclaims any claim for such legacy, the bill as to him should be dismissed.

Where two of several defendants, in their answers, claim rights and relief as against their co-defendants, in case the complainants should be entitled to relief, and the decree of the court below *dismissed* the bill with costs, they not being aggrieved by such decree, cannot *appeal* therefrom; an appeal on their part is not necessary in order to save their rights.

APPEALS from the Circuit Court for Baltimore city.

The two appeals in this case were taken, the one by the complainants, Hanson and wife, and Nelson and wife, and the other by two of the defendants, John T. Worthington and Samuel Worthington, from a *pro forma* decree of the court below, (KREBS, J.,) dismissing the bill filed by the complainants. The claim set up by the bill, the defences thereto relied on in the answers, and the facts, are all fully stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Geo. W. Dobbin* and *J. N. Steele* for the complainants:

1st. The bequest of $10,000, in the will of the testator, to John T. Worthington, *in trust*, for the maintenance and sup-

port of the testator's widow, during her life, and after her death to the children of his daughter Mary, vested in remainder in said children upon the death of the testator, and became payable to them on the death of the widow, and the *renunciation* of this bequest by the widow, in no wise affected the interest of the legatees in remainder. All that fell into the residuum by this renunciation, and all that the widow gave up thereby, was the *income* with which the trustee was to maintain the widow *durante vita*, and the right of such maintenance. 1 *Gill*, 403, *Darrington vs. Rogers*.

2nd. There was no renunciation by John T. Worthington of the trust created by this bequest, and the funds having come into his hands, he is bound to account to the legatees in remainder therefor, with interest thereon from the date of the death of the widow. On this point it is objected, *first*, that there was no trust for the legatees in remainder. But the trust clearly extended to them, and the trustee had duties to perform towards them; the subject of the trust was personal property, which he was bound to *pay over* to the parties entitled, upon the death of the widow. The will imposes two classes of duties upon the trustee in reference to this bequest, *one* in regard to the *income*, and the other as to the *principal;* the former he was to apply to the maintenance of the widow during the life, the latter he was to pay over to the legatees in remainder upon the death of the widow; and by the express terms of the will, his powers and duties as such trustee were to *continue* during the requisite continuance of the trust. Again, it is said he did not *accept* this trust, but *renounced* and *repudiated* it. But, in point of fact and *law*, he did *accept*. He came forward and *proved the will*, and *took out letters* under it, and where a party does this, he is bound to execute the will, and *accepts the trusts thereof*. *Hill on Trustees*, 314. How has he *renounced* or *repudiated* it? The law requires plain, strong and unequivocal proof of his renunciation before the trustee can divest himself of such a trust. 4 *H. & J.*, 430, *Fishwick vs. Sewell*. Now it is not pretended that this trustee ever *expressly* renounced this trust, or that he ever said a word repudiating it, but the renunciation is sought to be *inferred* from certain acts,

or rather from his *non-action.* The testator died in 1834, and the executor's 1st and 2nd administration accounts were passed in 1837, and he now says, that because in these accounts no notice was taken of this legacy, he never was trustee of it; that is, the *non-performance* and *non-discharge* of his duties as trustee, is proof that he never was trustee, or, if he ever was, that he renounced the trust. This is to set up a *breach of trust* as a *disclaimer* of the trust. But the inventory, the administration accounts, and the various distributions show that for the whole time he was in *receipt* of the property in the character in which the will cast it upon him. The estate remained open, and is in fact still open, no *final* account by that name having yet been passed. It is also clear law, that where a trustee has once accepted a trust, he cannot afterwards, by disclaimer, renounce or repudiate the duties and responsibilities of the office. *Hill,* 219. Again, it is well settled that where a party holds the double capacity of executor and trustee, the fund will be considered in his hands as trustee after the time limited by law for the settlement of the estate, nor is this principle or the responsibility of this trustee and executor to the *cestui que trust* at all varied by the fact that there were here two executors, for each is liable to them for the full extent of the funds he receives. 1 *Md. Rep.,* 190, *Beall vs. Hilliary.* The trustee, therefore, having accepted the trust, he could only discharge himself of it by paying over the money to these legatees in remainder, and his failure to do so, is a breach of trust for which he is *primarily liable,* and *failing this liability,* the residuary legatees, to whom the fund has been *wrongfully* paid, are *responsible* to these *cestuis que trust,* and interest should be calculated from the time the fund became due and payable to them. *Hill,* 173.

3rd. There have been no such *laches, acquiescence* or *concurrence* in the acts of the trustee and executor, on the the part of the complainants, as will discharge him from liability. The acts of Worthington, *as executor,* in making these various distributions, do not protect him, for he settled up the estate in the orphans court without *plenary proceedings,* as provided for in the act of 1798, ch. 101, sub-ch. 14, sec. 12, and in doing

so, he merely acted *in pais*, and at his peril. 4 *Md. Ch. Dec.*, 425, *Conner vs. Ogle.* As trustee, nothing but *gross laches* on the part of the *cestuis que trust* will protect him. A party standing by and ignorant of his title, and acting under a plain and acknowledged mistake of his legal rights, will not forfeit those rights in consequence of such misapprehension. 6 *H. & J.*, 525, 526, *Lammot vs. Bowly.* But we need not go to this extent, for there has been no acquiescence on our part in any act of the executor or trustee, inconsistent with our claim to this legacy. The *release* to the executor is only for the *distributive* shares of the *residue*, and purports to be given by the parties to it as *residuary legatees.* It only acknowledges the receipt of such funds *as far* as they have come to the hands of the executor, and been *accounted for* by him. What information did this give us of the legacy, or that the executor had not *retained* for it? It is perfectly consistent with this release that there may have been other assets to be received and accounted for, out of which this legacy could have been paid, or that the executor had retained therefor. Nor are the releases to the guardian of any more avail. They only purport to release the guardian for what he *has received,* whereas this is a claim for money which never came to his hands. Besides, at the time these releases were signed, the complainant legatees were minors, and have since been *married women,* and under all the circumstances of the case, it is confidently insisted there have been no such *laches, acquiescence* or *lapse of time* as will prevent them from recovering this claim from the trustee and the parties to whom it has been wrongfully paid, all of whom are now alive and in court, with this very fund now in their possession.

4th. That the statute of *limitations* does not apply to this case, the trust being enforcable *only in equity.* It was a subsisting, continuing, active trust, over which a court of law had no *concurrent jurisdiction,* but which could only be enforced in equity, and to such a case the statute of limitations has no application. 1 *Story's Eq.*, secs. 539, 540, 129. 3 *Gill*, 159, *Dugan vs. Gittings.* 8 *Gill*, 395, *Barnes vs. Compton.* 3 *Md. Rep.*, 366, *Hertle & Wife, vs. McDonald.* 4 *Md. Rep.*, 362,

*Young vs. Mackall.* 5 *Md. Rep.*, 334, *Greenwood vs. Green-
wood.* 6 *Md. Rep.*, 319, *McDowell vs. Goldsmith.* 6 *Md.
Rep.*, 418, *Bowie vs. Stonestreet.* 8 *Md. Rep.*, 87, *Teackle, et
al., vs. Gibson.* 3 *Sumner*, 476, *Baker vs. Whiting.* 2 *Hawks*,
486, *Tate vs. Greenlee. Ibid.*, 490, *Falls vs. Torrance.* 1
*Dessaus*, 150, *Lindsay vs. Lindsay.* 10 *Leigh*, 285, *Baker
vs. Morris.* 3 *How.*, 411, *Oliver vs. Piatt.* 1 *Peere Wms.*,
554, *Farrington vs. Knightly.*

*John V. L. McMahon* for the Worthingtons, argued:

1st. That John T. H. Worthington, is not responsible to
the complainants as trustee or legatee in trust of this bequest
of $10.000, because the legacy and the trusts imposed by it
were never accepted by him, but were, on the contrary, dis-
claimed by him, by all his conduct and acts in the adminis-
tration of the estate. There is not a single act or word of this
trustee shown in the record, or in his administration of this es-
tate in acceptance of this trust, and it is clear, that the duties
and liabilities of a trustee cannot be imposed upon any one
without his assent or against his will. 7 *G. & J.*, 164, 165,
*Maccubbin vs. Cromwell.* No express renunciation of the
trust is necessary; there must be an acceptance of the trust,
especially if the bequest be of personalty. There must be
some assent or some act done in the capacity of trustee, be-
fore the law will make the transfer to him in that capacity,
even where the *same party* is executor and trustee. (16
*Alabama*, 14, 15, *Perkins vs. Moore.*) But here there were
*two joint executors* and but *one* of them is made trustee by
the will, and in such a case the principle of a transfer by ope-
ration of law does not apply. 2 *G. & J.*, 220, *Watkins vs.
The State.* Where an executor is also legatee, it is necessary
to the vesting of the legacy in him, that he should give his
*assent*, either express or implied from his *doing some act* in
the *character of legatee rather than that of executor;* it is not
enough that the act is equally applicable to *both* characters.
2 *Wms. on Excrs.*, 849, 850, *(Ed. of* 1832.) 7 *Taunt.*, 217,
*Doe vs. Sturges*, in 2 *Eng. C. L. Rep.*, 80, 81. A renun-
ciation of a trust may be by parol, and at any length of time,

or by conduct inconsistent with the character of trustee.  *Hill on Trustee*, 221, 226.

2nd.  That by the renunciation of this bequest by the widow, all the trusts for her benefit created therein, became wholly inoperative and void, and thereby all the rights and duties of Worthington, as *trustee* under the bequest, wholly ceased, and there remained only the direct bequest over of the sum of $10.000, after the death of the widow, to the children of the testator's daughter Mary.  That after this renunciation, Worthington had not the right, nor if he had, was he under any obligation, *as trustee for those in remainder*, to claim and hold the bequest only for the purpose of handing it over to the legatees in remainder, at the death of the widow.  And that after this renunciation, by force of which the bequest resulted to the estate during her life as undisposed of, the legatees in remainder, at her death, became entitled to it, (if at all,) by a *direct* and *immediate* devise, without the intervention of a trustee, and were entitled on their own application, to claim or have secured to themselves at her death the payment of the same, and Worthington is not responsible to them for not having claimed or secured the legacy for them.  It is well settled, that the estate to a trustee is limited by that to the *cestuis que trust*, that he takes no greater estate than the purposes of the trust require.  The only purpose of this trust was to create a trust *for the life of the widow;* the moment she died the *trust ceased.*  The language of the devise clearly shows this to have been the sole object and purpose of the testator.  After the widow's death the money was to be handed over by the executors to the legatees in remainder, as the *testator's property*, and they were to receive it by virtue of a *direct* and *immediate* devise, without the intervention of a trustee.  In support of these views see *Hill on Trustees*, 239.  1 *Barn. & Cress.*, 336, *Player vs. Nicholls*, in 8 *Eng. C. L. Rep.*, 94; 60 *Eng. C. L. Rep.*, 669, *Muller vs. Claridge; 4 Mees. & Wels.*, 428, *Barker vs. Greenwood.*

3rd.  That the time, manner and circumstances of the administration and distribution of the estate, down to its *final* distribution amongst the complainants and others as residuary

54     v. 12.

legatees, and the lapse of time before making this claim, show not only such acquiescence, but also such concurrence on the part of the complainants, in the final distribution without deduction of this bequest, and with full knowledge or means of knowledge that it had not been paid or retained for, and also such delay and *laches* in the assertion of the claim, until long after the death of the widow, and the final distribution, as are of themselves sufficient to bar the complainants' title to relief against John T. H. Worthington, if they ever had any, especially when coupled with the facts of the *release to him* and his co-executor by the husbands of the female complainants, and also of the wives and legatees after their arrival at age, to their guardian and father, and after his release to the executors. And neither is Worthington, as *surviving executor*, responsible to the complainants for their share in remainder of this bequest, because of his failure to retain for the same; for after the widow's renunciation, it was the right and duty of the legatees in remainder or their legal representatives, to claim or apply for the retainer of this legacy, and being guilty of *laches* in not claiming the bequest or the retainer for it, when they had full knowledge of it, and that it had not been paid or retained for, they cannot charge the executors because of their failure to retain for it. After the death of the widow, in 1838, this legacy was payable immediately to the legatees in remainder, and, after it became so payable, the executors finally distributed to the complainants or their legal representatives and the other residuary legatees, assets to more than the amount of this bequest without any claim made by them thereto, or any pretence of objection to the distribution without deducting the legacy, and received from the complainants or their representatives the releases above stated, whereby and by the acquiescence, concurrence and *laches* of the complainants before stated, the executors were discharged from liability to them, if there ever was any. Again, the estate was finally distributed in the lifetime of Johns and by *both* executors, and the breach of duty, if any, was by both, and to any claim for relief on that ground, the legal representatives of the deceased co-executor are proper and necessary parties.

The executor, in dealing with this estate, was acting honestly, innocently and as much to his *own prejudice* as that of the complainants, for he himself was *one of the* legatees in remainder of this bequest. If there was a mistake he was *helped on* in it by the complainants, and there is an *equitable plene administravit* made with their knowledge and consent. If a party to whom a legacy is given *says* to the executor, "I don't mean to claim it," this is an *estoppel*, and he cannot afterwards claim it, or induce the executor to administer the assets upon the footing that no such claim will be asserted, this is an *estoppel*, and the claim cannot be afterwards asserted. 1 *Ves. Jr.*, 172, *Clinton vs. Hooper.* Bell on *Property*, 195, in 67 *Law Lib.*, 143. *Acts* and *conduct* may as strongly declare this to the executor, and be as much evidence of a disclaimer as *words*. It must be assumed, that all these parties knew all their rights, the will, their rights under it, the administration and distribution accounts and releases in the orphans court; for outside parties even are bound to know what the *public records* will disclose. 5 *Md. Rep.*, 231, *Miller & Mayhew vs. Williamson*, and same case in the court of chancery in 2 *Md. Ch. Dec.*. 102. 1 *Bailey's Eq. Rep.*, 277, *Stephenson vs. Axson, et al.* But here these complainants came in and settled under these accounts in the orphans court, the proper *distributing forum*, and they knew, therefore, that the estate was being distributed in disregard of their rights to this legacy, and yet assented to such distribution.

*Acquiescence* alone is sufficient for this case. The complainants were bound to know what the law is, and whenever a party knows his rights, and stands by and sees another dealing with the property in a manner repudiative of his rights, and does not assert them, he is *estopped* from ever afterwards asserting his rights to such property. 7 *Simons*, 1, *Govett vs. Richmond, in* 9 *Cond. Eng. Ch. Rep.*, 449. 2 *Ves. Jr.*, 92, 93, *Hercy vs. Dinwoody.* 10 *Md. Rep.*, 302, 317, *Funk vs. Newcomer.* Even *forbearance* to make the demand affords a presumption, either that the claimant is conscious it was satisfied or *intended* to relinquish it. 2 *Ves., Jr.*, 583, *Pickering vs. Lord Stamford.* In *Stroud vs. Stroud*, 49

*Eng. C. L. Rep.*, 416, a party entitled to a legacy had a claim against the testator, which he concealed until after he *received the legacy* from the executor, and *plene administravit* was held a bar to such claim. These were all cases of *outside acquiescence;* here we are dealing with the proceedings of the proper *distributing forum,* and with *parties to such proceedings,* with *full notice thereof,* but have neglected to prosecute their claims. In such a case equity can afford them no relief. 1 *Keen,* 392, *Sawyer vs. Birchmore,* in 15 *Cond. Eng. Ch. Rep.*, 399, 401. 17 *How.*, 255, 256, *Williams vs. Gibbes.*

But this is also a case of *concurrence* in proceedings in the proper distributing court. As parties, the complainants are forever concluded; a decree of distribution would forever have concluded them from setting up any claim *inconsistent* with that *distribution.* The orphans court has as ample powers as a court of chancery, to adjudicate upon all claims between distributees, legatees, and administrators and executors. It is a court peculiarly constituted for the distribution of assets, and a *general bill* for distribution cannot be filed in chancery because it would interfere with the jurisdiction of the orphans court. Where an executor and legatee honestly misconstrue the will, and have a settlement in full based on such misconstruction, the settlement will not be opened merely because of such mistake. 4 *Richardson's Eq. Rep.*, 349, *Keitt vs Andrews.* If a *cestui que trust,* being *sui juris,* participates in, or consents to, or after full knowledge acquiesces in an act of the trustee, amounting to a breach of trust, it amounts to a *waiver,* he cannot afterwards complain. *Adams Eq.*, 62, in 68 *Law Lib.*, 93, 94. *Hill on Trustees,* (1 *Am. Ed.,*) 525, 526, 527. 5 *Gill,* 505, *Hall vs. United States Ins. Co.* The complainants here acquiesced, concurred and participated in an act on the part of the trustee and executor, which *disturbed* the *basis of distribution* according to the claim now presented, and they are thus clearly brought within the principle above stated. *Lewin on Trusts,* 639, in 24 *Law Lib.*, 325.

Does *infancy* make any difference in this case? The com-

plainants do not allege in their bills, any excuse by which they can be taken out of the case of adults, neither mistake, fraud, infancy or any thing else. But suppose they had alleged infancy, this defence could not avail them, and was completely waived by what subsequently took place. The guardian is constituted the peculiar custodian of the infant's rights, and when he comes forward and deals with an executor and compromises the rights of his ward, the infant is bound, so far as the executor is concerned, and must look to the guardian's bond for redress. The executor is authorised to look to the guardian as the representative of the infant. But when these infants came of age they released the guardian, with full knowledge that this legacy had not been paid, and this release is binding on them. 5 *Gill*, 29, *Forbes vs. Forbes.*

Again *laches* and *lapse of time* are a full bar to this whole claim. Many of the cases already cited are applicable to this point. The question is, at what time parties must come in to be relieved from the equitable bar, and this depends upon the peculiar circumstances of each case. In 4 *Richardson's Eq. Rep.*, 349, a case already cited, and one very similar to the present, it was said, that parties desirous of opening a settlement on the ground of errors or mistakes, must *make haste* in their application to the court. In 1 *Bailey's Eq. Rep.*, 197, 198, *Moore vs. Porcher*, it was held, that an executor who makes a *general distribution* of the estate, will be protected after the *lapse of four years;* if he makes a full and fair distribution he no longer sustains the character of executor, but the trust is discharged. Again, the parties must come in at such a time as that the court can do full and equal justice to all parties. 13 *Ohio Rep.*, 585, *Ludlow vs. Cooper.* If the overpaid legatees should be held not to be liable by reason of the *laches* of these complainants, then clearly the executor ought to be released. The plea of *laches* and *lapse of time* is as effectual as the plea of limitations, and they are analogously applied in equity. 2 *Story's Eq.*, secs. 1520, 1520 *(a,)* and *notes*. 30 *Miss. Rep.*, 320 to 332, *Young vs. Cook.* 11 *B. Monroe*, 161, *Wickliffe vs. City of Lexington.* The court itself, in its own discretion, may refuse to grant relief

after the limited period, even though the statute is not pleaded and the bill is not demurred to. *Lewin on Trusts*, 617, in 24 *Law Lib.*, 313. *Hill on Trustees*, 169, *note*. After *disclaimer* of the trust limitations will begin to run. These parties had a remedy at law; they could have sued in the orphans court, and they could have sued at law on the *executors' bond*. The remedy was at least *concurrent*, and in such case equity will, in *obedience* to the statute, apply the statutory bar.

4th. That in any view of the case, the court, having now before it, as parties to the case, under the supplemental bill and answer, the four residuary legatees who were overpaid in the distribution of the estate to the prejudice of these complainants, and the two Worthingtons, who were exclusively entitled to this bequest of $10.000, ought, in relief of the executor and trustee to give the complainants relief, if any, by *direct decree* against such overpaid residuary legatees. That he is entitled to such relief in this case and on this bill, as against his co-defendants, is clearly settled by the case of *Gibson vs. McCormick*, 10 *G. & J.*, 101. The court has power to *mould the decree*, so as to do complete justice between the parties, (5 *Gill*, 355, *Farmers & Mechanics Bank vs. Wayman & Stockett*,) and will decree immediate payment from those who are ultimately bound. 5 *Cranch*, 330, *Riddle vs. Mandeville*. 1 *Bailey's Eq. Rep.*, 277, 278, *Stephenson vs. Axson, et al. Lewin on Trusts*, 635 to 639, in 24 *Law Lib.*, 323, 324. That these co-defendants are liable if the complainants have any claim, is clear, for by the distribution of the residue, without deducting this bequest of $10.000, they have by the admissions of their own answers, received more than they ought to the amount of $5000, or one-half thereof, and they received this with full knowledge of this bequest, and that it had not been paid as is fully shown by the will and the executors' accounts. These co-defendants are, therefore, each respectively and severally liable to the legatees in remainder, for the amounts they respectively received in the distribution of this residue, over and beyond what they were entitled to in the proper distribution of it. A devise of *residue*, is of what remains after *debts* and *legacies* are paid, and when a

party takes this before the legacies are paid, he takes what the will does not give him, and receives it as trustee for those entitled, and must refund. 1 *McCord's Ch. Rep.*, 389, *McCants vs. Bee.* 2 *Johns. Ch. Rep.*, 626, 627, *Lupton vs. Lupton.* 17 *Mass.*, 384, *Walker vs. Hill.* 2 *Southard*, 424, *Harris vs. White.* 2 *Peere Wms.*, 144, *Norton vs. Turvill.*

5th. As to the *quantum* of recovery, if at all entitled. That by the distribution of the *residue* without deducting the $10.000, the complainants each in fact received one-eighth of that amount, over and beyond what they were entitled to, or would have received if this legacy had been taken out of the estate, whilst they were each entitled to one-fourth of the $10.000, under the bequest, and they are therefore entitled only to one-eighth of that sum, as the amount necessary to correct such erroneous distribution and restore to them what they lost by it, and that *without interest*, at least until the filing of their bill, because of the non-claim, acquiescence, concurrence and *laches* already referred to. 12 *Ves.*, 386, *Bruere vs. Pemberton.* 7 *Ves.*, 546, *Pettiward vs. Prescott.* *Hill on Trustees*, 524.

As to the *appeal by the Worthingtons.* If the case made by the complainants entitles them to relief, then these appellants insist, as has already been argued, that they also and especially Samuel Worthington, although defendants, are yet as two of the legatees in remainder, entitled to like equitable relief in respect of their shares of this bequest against their co-defendants, made such by the supplemental bill of the complainants, and this appeal is taken to guard against the possible assumption, that by their failure to appeal this right would be lost.

*S. T. Wallis* for the other defendants, argued:

1st. That the *second* point on the part of J. T. H. Worthington, was well taken, and ought to dispose of the relief sought by the bill as against these defendants also, and in addition to the authorities there relied on, see 1 *Bradford*, 5, *Paff vs. Kinney;* 8 *Md. Rep.*, 230, *McClellan vs. Kennedy;* 7 *Gill*, 366, *Richards & Wife, vs. Swan.*

2nd. That the plea of limitations, pleaded by these defendants, strictly considered, apart from the question of *laches* in equity, is a bar to the relief prayed in the bill, even if it were otherwise proper to be granted. 10 *Texas Rep.*, 246, *Tinnen vs. Mebane.* 2 *Wms. on Excrs.*, 1722. 1 *H. & G.*, 265, *Murphey vs. Barron.* 3 *G. & J.*, 12, *McCormick vs. Gibson. Ibid.*, 374, *Penn vs. Flack, et al. Ibid.*, 395, *Green vs. Johnson.* 10 *G. & J.*, 217, *Tiernan vs. Rescaniere.* 1 *Gill*, 234, *Berry vs. Pierson.* 3 *Gill*, 161, 162, *Dugan vs. Gittings.* 2 *Md. Ch. Dec.*, 390, *McDowell vs. Goldsmith*, and same case in 6 *Md. Rep.*, 319. 3 *Md. Rep.*, 366, *Hertle & Wife, vs. Schwartze.* 7 *Johns. Ch. Rep.*, 120, 124, *Kane vs. Bloodgood.*

3rd. If John T. H. Worthington is to be treated as *trustee*, it is clear he has no remedy over against these defendants, for there is no *privity* between him and them in this character; it is a matter between the trustee and his *cestuis que trust.* It is only when he is treated *as executor* that a *privity* can be made out between him and these defendants. But even if he be liable as executor, to the complainants, he has no right to restitution from these defendants, having made the distribution in question voluntarily, with full knowledge of fact and law. 1 *Gill*, 1, *Stevenson vs. Reigart.* 4 *Gill*, 425, *Mayor & C. C. of Balto. vs. Lefferman.* 5 *Gill*, 244, *Morris vs. Mayor & C. C. of Balto.* 5 *Md. Rep.*, 219, *Miller & Mayhew, vs. Williamson.* 2 *Ves.*, *Sen.*, 194, *Orr vs. Kaines.* 2 *Vernon*, 205, *Newman vs. Barton.* 1 *Keen*, 391, *Sawyer vs. Birchmore*, and same case in 2 *Mylne & Craig*, 611. 2 *Jac. & Walk.*, 263, *Goodman vs. Sayers.* 8 *Beavan*, 243, *Cattell vs. Simons.* 2 *Fonb. Eq.*, Part 1, *ch.* 2, *sec.* 5. 2 *Wms. Excrs.*, 1244, 1246. 1 *Story's Eq.*, *sec.* 92, *note* 4.

4th. That even if, as executor, being liable to the complainants, he might otherwise have had his remedy over against these defendants, he has no such remedy under the circumstances of this case, and especially under the plea of limitations by them severally pleaded.

BARTOL, J., delivered the opinion of this court.

The claim for relief of the complainants, Hanson and wife, and Nelson and wife, arises under the following claus‥ ᵒᶠ ᵗʰᵉ

will of John Tolley Worthington: "I give and bequeath to my grandson, John Tolley Worthington, the sum of ten thousand dollars, to be by him put out at interest on real or personal security, or invested in bank stock, or in stock of the United States, or of the State of Maryland, to be by him held in trust for the following uses, intents and purposes, to wit: in trust to apply the dividends, interest, issues and profits arising therefrom, during the life time of my wife, Polly Worthington, to the maintenance and support of my said wife, and if any surplus of such dividends, interest and profits should remain, over and above the maintenance and support of my said wife, then I give and bequeath the said sum to my said grandson, John Tolley Worthington; and from and after the death of my said wife, then I give and bequeath the said sum of ten thousand dollars, and the stock and securities in which the same may have been invested or placed, to be equally divided between the children of my daughter Mary, living at the time of the death of my said wife, and the then living descendents of my said daughter Mary, such descendents not taking *per capita*, but *per stirpes;* that is, the said descendants of a deceased child to take what their deceased parent, if living, would have been entitled to."

The testator having given other ten thousand dollars to Richard Johns, in trust, for certain purposes, directs as follows: "*Item.*—I hereby will and direct that the power of putting out at interest and investing in stock the aforesaid two sums of ten thousand dollars, mentioned in the two last preceding clauses of this my will, shall be a continuing power during the requisite continuance of the trust, and that my grandson, John Tolley Worthington, and my son-in-law, Richard Johns, may, as often as they shall see fit so to do, severally collect the money by them put out at interest, and sell the stock by them purchased as aforesaid, and again, and as often as they deem it expedient so to do, put out the same at interest, or invest in stock as aforesaid."

By a codicil to his will, the testator declares his will and intention to be, that the said provision for his wife shall be "in lieu and bar of all her right, and thirds, and dower."

The testator died in 1834, the will and codicils were duly admitted to probate on the 16th day of September of that year, and on the 3rd day of October, in the same year, letters testamentary were duly granted thereon to John Tolley Worthington, the grandson, and Richard Johns, they being the executors named in the will.    On the 26th day of September 1834, Polly Worthington, the widow, filed her renunciation of the bequest made in her behalf, and elected to take her dower and legal share of the estate.    She died in the year 1838, and at the time of her death, the children of the testator's daughter Mary, then living, were the complainants, Anna Maria Hanson and Comfort M. Nelson, and the said John Tolley Worthington, the trustee and executor, and Samuel Worthington, who were the only descendants of the said testator's daughter Mary.

The executors proceeded to administer the assets, returned an inventory on the 25th day of October 1834, and passed several administration accounts, of which the 1st was passed on the 11th day of January 1837, the 2nd on the same day, the 3rd on the 14th day of February 1839, the 4th on the 31st day of December 1839, and the 5th and last on the 12th day of May 1846.    By those accounts it appears that the whole personal assets of the deceased which came to the hands of said executors, was applied to the payment of debts, the expenses of administration, and the payment of legacies under the will, *other than the legacy of ten thousand dollars* first above referred to, and the surplus or residue of the assets was distributed and paid to the residuary legatees under the will, in the same manner as if the said legacy of $10,000 had not been made.

The residuary legatees named in the will were the testator's eight grand-children, viz: John Tolley Worthington, Anna Maria Worthington, Comfort Worthington, Samuel Worthington, Polly Worthington Johns, John Tolley Johns, Richard Johns, and Sarah Weems Johns, two of whom, Anna Maria and Comfort, are complainants in this case.

By the 2nd administration account, passed on the 11th of January 1837, it appears there was distributed and paid to the

eight residuary legatees $4700 each.  This sum for each of the complainants, Anna Maria and Comfort, was paid to their guardian, they being then minors; the receipts of the guardian show that he received for each of them as follows: in May 1835, $1500; in October 1835, $2700; and in July 1836, $500.

By the 3rd account, passed the 14th of February 1839, there was distributed and paid to each of said residuary legatees $950.96, which, by the several receipts exhibited, appears to have been paid as follows: in January 1837, $200; in June 1837, $237; in September 1837, $113.96; and in October 1838, $400.

By the 4th account, passed the 31st of December 1844, the executors are allowed for $700 paid to each of the residuary legatees, the shares of the complainants being paid to their respective husbands.

By the 5th and last account, passed in May 1846, the executors were allowed for $36.53½, amount paid to each residuary legatee, the same appearing to be a distribution of the whole residue of the assets among the residuary legatees, who executed the following release:

"Know all men by these presents, that we, John T. Worthington, John T. H. Worthington, guardian of Samuel Worthington, Richard Johns, Jr., John T. Johns, R. Horace Love, who intermarried with Polly Worthington Johns, Thomas H. Hodges, who intermarried with Sarah W. Johns, Charles G. Hanson, who intermarried with Anne M. Worthington, and William B. Nelson, who intermarried with Comfort Worthington, all grand-children and residuary legatees of John T. Worthington, late of Baltimore county, deceased, do hereby severally acknowledge, each of us, to have received of John T. Worthington and Richard Johns, the executors of said deceased, the sum of ($36.53½) thirty-six dollars and fifty-three and a half cents, making, together, the sum of two hundred and ninety-two dollars and twenty-eight cents, and being in full of our respective proportions of the personal estate of the said deceased, as far as the same has come to the hands of the said executors, and accounted for by them with the orphans

court for Baltimore county; and in consideration thereof, we do hereby release, acquit, exonerate and discharge the said John T. Worthington and Richard Johns, executors as aforesaid, their heirs executors and administrators, of and from all and every action, suit, claim or demand which could or might possibly be brought, exhibited or prosecuted against them, or any of them, for or on account of our said proportions, or the above mentioned sum or sums of money, or the payment thereof, hereby declaring ourselves fully satisfied, contented and paid, as above specified. Given under our hands and seals this seventeenth day of July, in the year eighteen hundred and forty-five.

|   |   |
|---|---|
| J. T. Worthington, | (Seal.) |
| J. T. H. Worthington, Guardian for Saml. Worthington. | (Seal.) |
| Richard Johns, Jr., | (Seal.) |
| J. T. Johns, | (Seal.) |
| R. Horace Love, | (Seal.) |
| Thos. H. Hodges, | (Seal.) |
| Chas. G. Hanson, | (Seal.) |
| W. B. Nelson, | (Seal.) |

Signed, sealed and delivered in the presence of *T. Hanson Belt.*"

Which release was duly acknowledged before a justice of the peace, and, on the 12th day of May 1846, was filed and recorded by the register of wills for Baltimore county.

John T. H. Worthington, guardian of Ann M. Worthington and of Comfort Worthington, accounted with his said wards for the several sums of money received by him during their minority from the said executors, and on their arrival at the age of eighteen years, the said Ann Maria and Comfort severally executed releases to their said guardian, wherein each of them acknowledges to have received certain property and money therein specified, "being in full of all property and cash due to me by my said guardian;" and in consideration thereof, each of them "releases, acquits, exonerates and discharges the said John T. H. Worthington, as guardian as aforesaid, his heirs, executors and administrators, of and from all and every action, suit, claim or demand which could or

might possibly be brought, exhibited or prosecuted against him, them or any of them, for or on account of the above mentioned property and cash, or the payment thereof, hereby declaring myself satisfied, contented and paid, as above specified."

The release of said Ann Maria being dated the 16th day of November 1839, and that of Comfort bearing date the 20th day of February 1841, and were severally acknowledged and duly recorded.

The complainants, Anna Maria and Comfort M., were married at about the age of nineteen years, the former to Charles G. Hanson, in January 1840, and the latter to Wm. B. Nelson, in February 1842.

The original bill in this case was filed on the 1st day of April 1854, against John Tolley Worthington and Samuel Worthington, claiming from said John Tolley Worthington, as trustee, an account of the said $10,000 legacy, and the manner in which the same had been invested, and that there should be paid to the complainants their respective portions thereof. After answers were filed by the respondents, John T. Worthington and Samuel Worthington, the complainants, on the 8th day of January 1855, filed a petition praying leave to amend their said bill; and the same being granted, they on the 11th of January 1855, exhibited their amended bill, whereby they made parties defendants the said John T. Worthington as surviving executor, (Richard Johns his co-executor having died,) and also all the said residuary legatees, claiming among other things such relief as may be necessary to reform and correct the distribution of the said legacy of ten thousand dollars, so as to give to the complainants their full share thereof, and interest thereon from the time the same became payable, and to cause any of the said parties who may have received more than his, her or their share or shares, to account for, restore and pay over the same as they may be directed by the court, with interest thereon since the date of such wrongful overpayments; and that the whole distribution of said legacy, and its accumulated interest, may be now adjusted, settled and paid over, as if the same had never been erroneously made.

The defence of the several respondents is based upon the

lapse of time and the *laches* of the complainants in making their claim, their acquiescence and concurrence in the settlement of the estate by the executors, and in the distribution of the assets, and the releases executed by the said Anna Maria and Comfort M. to their guardian, and the release given by their husbands to the executors are also relied upon as a bar to the relief prayed, and the residuary legatees have pleaded the statute of limitations in bar of any claim against them, either by the complainants or by the respondent, Worthington.

A *pro forma* decree having been passed by the circuit court, dismissing the bill, the complainants have appealed to this court.

The respondent, John T. Worthington, by his answer, claims that in the event of his being held answerable to said complainants for their shares of said legacy, the other respondents, Love and wife, Hodges and wife, John T. Johns and Richard Johns, who were overpaid in said distribution among the residuary legatees, ought to be compelled by decree to refund and pay the same to him, or by direct decree to pay the same to the complainants to his relief, and the said John T. Worthington and Samuel Worthington have also appealed from said decree.

It is clear, from the facts and circumstances disclosed by the record, that the executors acted from the beginning under a mistake as to the effect of the renunciation by the widow; and all the errors which occurred in the administration of the estate grew out of that mistake. The legal effect of such renunciation is not any longer a matter of contest in the cause; the authorities abundantly establish that by such renunciation the rights and interests of the legatees in remainder were in no wise affected. See *Darrington vs. Rogers*, 1 *Gill*, 403; *McElfresh, Admr., vs. Schley & Barr*, 2 *Gill*, 203.

While, therefore, the renunciation had the effect of striking from the will the bequest to Mrs. Worthington, the estate in the remainder was vested in the persons to whom the same was limited by the will.

We regard the probate of the will, and the taking out of letters testamentary by John T. Worthington, as a sufficient

evidence of the acceptance by him of the trust created by the will, and there is no proof of any actual renunciation or disclaimer till the filing of his answer in this cause. See *Hill on Trustees*, 214. 2 *Wms. on Excrs.*, 1530.

"Where a party has once fixed himself by any means with the acceptance of a trust, he cannot afterwards, by disclaimer, renounce or repudiate the duties and responsibilities of the office." *Hill on Trustees*, 219.

Looking at the several clauses of the will which we have cited, we are of opinion that the trust created and vested in John T. Worthington, was not limited to the life of Mrs. Worthington, but was a continuing, subsisting trust for the parties in remainder after her death, and the trustee could only be discharged from his obligation by the payment of the fund to the *cestuis que trust*. The legal interest was vested in him by the will; he was charged with the performance of certain duties with reference to the fund; had the power of investing, selling and reinvesting; and to enable him to discharge those duties, and to carry out the purposes of the trust, his estate extended beyond the life of Mrs. Worthington. Such, we think, was the intention of the testator, as gathered from the will. Whatever might be the construction of the will as to the extent of the estate vested in the trustee, if the property devised were realty—and on this question the authorities seem to be somewhat conflicting—here the devise is of personalty, and we entertain no doubt that the fee was vested in the trustee, and could not be devested, except by a transfer by him. *Hill*, in his treatise already referred to, after citing and commenting on the various cases in which this question had arisen, says, on page 248: "The question as to the duration of the estate of the trustees can rarely arise where the subject is personal estate; for in that case the whole legal interest is in general vested in the trustees by a gift, without any words of limitation, and will continue in them until devested by a legal transfer or assignment."

Such being, in our opinion, the true construction of the will, it follows that it was the duty of John T. Worthington, the trustee, to collect and receive the said legacy of $10,000, for the purposes of the trust.

If he had been sole executor, it is clear that by operation of law, the fund would be considered in his hands as trustee after the time limited by law for the settlement of the estate. It has been argued that this principle is inapplicable to this case, because Worthington was a co-executor with another; and *Watkins'* case, 2 *G. & J.*, 220, has been cited in support of that view. But it appears from the record that Richard Johns, the co-executor, died before the filing of the bill; Worthington then became, as survivor, the sole executor, and the principle to which we have adverted would therefore apply in the same manner as if he had been sole executor from the beginning. This is the plain inference from the ruling of the court in *Watkins'* case. The trustee is, therefore, answerable to the complainants as *cestuis que trust* for their respective proportions of the legacy, unless something has occurred to relieve him from such responsibility. In our opinion, the releases relied upon in defence cannot avail to bar the equity sought by the complainants. Conceding that the releases of the wards to their guardian, made after they had attained the age of eighteen, when by the statute they were competent to execute them, and being made *bona fide*, would operate as a good acquittance to the guardian, still such releases could not operate to discharge from liability any third person holding funds in the character of their trustee, or responsible to them in that character for funds which had never been paid or transferred to their guardian. Nor can the release to the executors, dated the 17th of July 1845, have the effect of discharging John T. Worthington, the trustee, from his liability for the specific legacy. The latter release, by its terms, purported only to discharge the *executors* from the sums due to the parties releasing, as *residuary legatees* of John T. Worthington, deceased, and applied only to the proportions of the personal estate of said deceased due to them in that character.

The only remaining questions for us to consider, are, whether the complainants are barred of their equitable relief by limitations or lapse of time, or their *laches* and delay in making their claim? or by acquiescence and concurrence in the settlement of the estate and distribution of the fund?

After a careful examination of the numerous authorities cited as applicable to this part of the case, we are of opinion that none of these grounds of defence ought to prevail in this court. The bequest in the will is admitted to be valid, and the accounts exhibited show conclusively that it has not been paid to the parties entitled, owing to a mistake of the executors in the construction of the will. Those accounts show also, the manner in which and the persons to whom the fund has been improperly paid. The parties who have received wrongfully, as well as the executor and trustee, are alive and in court, subject to its decree; and we see no sufficient reason why the court may not do simple justice, by an equitable adjustment of the claims of the parties, and a correction of the errors which have been committed.

We have said that the trust in John T. Worthington, under the will, was a continuing trust; and that being so, we think the facts in the case do not show any such lapse of time, *laches*, or delay on the part of the complainants as can operate to bar their claim against him. What will constitute such a lapse of time and *laches* as will bar the right of parties to recover on a claim purely equitable, all the authorities say, must depend upon the particular facts and circumstances of each case. In the administration of the estate, the duty of the executors was to ascertain the persons entitled to the fund; their proceedings in the orphans court were *ex parte;* no steps were taken by them, under the act of 1798, ch. 101, sub-ch. 14, sec. 12, in appointing a meeting of claimants, nor was the distribution made under any order of the court; it was not conclusive on the complainants, even if they had been *sui juris*. But even supposing that those proceedings were known to the complainants, or were constructive notice to them of the acts of the executors, until the final distribution was made, they were not a notification to them that the legacy was not to be paid; notwithstanding any thing which appeared in the accounts, there might have been sufficient assets in the hands of the executors, not returned to the orphans court, to pay the legacy, or sufficient assets for that purpose yet to be received by them. When the final distribution was made, the com-

plainants were married women. Under these circumstances, we find no such acquiescence or concurrence on the part of the complainants as ought to preclude them from relief against John T. Worthington, and inasmuch as the respondents, Love and wife, Hodges and wife, John Tolley Johns and Richard Johns, have erroneously received the fund to which the complainants are entitled, they are equitably bound to refund the same, they having taken the fund subject to the trust, and the defences set up by them cannot avail to bar the recovery by the complainants; what we have said as to the responsibility of Worthington, is equally applicable to them. See 2 *Johns. Ch. Rep.*, 626, 627. 1 *McCord's Ch. Rep.*, 388, 389. *Stephenson vs. Axson,* 1 *Bailey's Eq. Rep.*, 274.

The sum which the complainants were entitled to receive under the will, was one-fourth part each of the legacy of $10,000; having already received the one-eighth part each of that sum, in the distribution erroneously made, there remains due to each of them the principal sum of $1250, on which we think they are equitably entitled to receive interest from the time that the same was wrongfully paid to the residuary legatees.

The payments were made to them in various sums and at different times, running through a period of several years; a portion of the money thus paid to them, they were entitled to as residuary legatees, and in fixing the time from which interest is to be counted, we adopt the date of the last payment. Considering that the amount which the complainants are entitled to recover ought to be paid by John T. Worthington primarily, and that he is entitled to relief against the respondents, Love, Hodges, John Tolley Johns and Richard Johns, who are ultimately bound for the same, we shall decree accordingly.

As to the respondent, Samuel Worthington, who, by his answer, disclaims any claim for the portion of the legacy due to him, the bill ought to be dismissed.

*Decree reversed, and*
*decree in favor of complainants.*

(Decided July 22nd, 1858.)

The same judge delivered the following opinion on the appeal of John T. Worthington and Samuel Worthington:

The decree from which this appeal was taken, was in favor of the appellants. They were respondents below, and by the decree of the circuit court, the bill was dismissed with costs. The appellants were, therefore, in no manner aggrieved thereby, and the appeal by them was erroneous, and must be dismissed. In order to save the rights of the respondents, John T. Worthington and Samuel Worthington, as set up by them in their respective answers, no appeal on their part was necessary.

*Appeal dismissed.*

(Decided July 22nd, 1858.)