*WILLIAM S. RAYNER *v.* WILLIAM S. BRYSON.    **473**

*Decided December 7th, 1868.*

PLEDGOR AND PLEDGEE ; SALE OF PLEDGE ; BILL FOR ACCOUNTING ; INTEREST ; COSTS.

A. loaned B. a thousand dollars, and took from him, as security for the payment thereof, certain shares of stock. Upon failure by B. to pay the amount loaned, when the same became due, and after demand made therefor, A. sold the stock, which had been pledged for its payment, through a broker, at the stock board of the City of Baltimore, and became himself the purchaser thereof. B. was promptly informed, and presented with an account of the sale, the proceeds of which were not sufficient to pay the amount of the loan. B. subsequently, on the 24th of December, 1863, filed a bill in equity, praying to be allowed to redeem the stock, and to have an account of the dividends received thereon. The matter was referred to the auditor, who stated an account which showed that the loan, principal and interest, was paid on the 20th of December, 1862, by dividends then received, leaving a small balance due B. From that date, dividends were received, from time to time, up to the period of filing the bill, and on each of such dividends, A. was charged with interest from the date of its receipt. *Held:*

That this mode of charging interest was erroneous; that A. should be charged with interest on the aggregate amount of dividends received, when the bill was filed, from that date to the time of stating the account, and on each dividend subsequently received from the date of its receipt.                                                                    p. 479

Upon a bill to redeem certain shares of stock pledged to secure a

debt, where the same was paid at the time of bill filed, and the pledgee had retained balances, the costs should be charged to him.  (a)

p. 482

On a bill by a pledgor, for an account of dividends received by the pledgee, interest should be computed by the auditor from the time the dividends were received up to the time of stating the account, and interest on the principal sum only, from that time till paid, can be allowed.  (b)

p. 483

In judgments at law, interest on the debt may be calculated down to the date of the judgment, and the whole will then bear interest from that date; but this statutory provision does not extend to decrees in equity on bills to account, where the account embraces charges of interest.  (c)

p. 483

Appeal from the Superior Court of Baltimore City, sitting in Equity.

In February, 1861, the appellant loaned the appellee, a thousand dollars, upon a pledge of ten shares of the stock of **474** *the Powhatan Steamboat Company, and in April, following, the further sum of nine hundred and forty-five dollars, on a pledge of nine other shares of stock of the same company. The appellee having failed to pay either of said loans at its maturity, the appellant after frequent demands for payment, sold the nine shares of stock through a stock broker, the net proceeds of which sale however were insufficient to pay the loan of $945, with interest thereon to the date of sale. Subsequently, upon failure of the appellee to pay the loan of $1,000, the appellant placed the ten shares of stock, which had been pledged for its payment, in the hands of a broker, with instructions to sell the same at the Public Stock Board of the City of Baltimore; the stock failing to bring at the Stock Board, a sum sufficient to cover the amount, to secure the payment of which it was pledged to the appellant, he purchased the same at the highest market price, but this was in-

---

(a)  As to the sale of stock pledged by the pledgee, see *Md. Fire Ins. Co. v. Dalrymple,* 25 Md. 245, and cases cited in notes.

(b)  As to charges for interest, see *Berry v. Griffin,* 10 Md. 32, note (a); *Hooper v. Hooper,* 81 Md. 177.

(c)  See Code of Pub. Gen. Laws, Art. 26, sec. 16.  The mode of charging interest in chancery, is by striking a balance whenever a credit is to be given superior to the interest then due; *Chapline v. Scott,* 4 H. & McH. 69.

sufficient to pay the full amount of the loan. Years afterward, on the 19th of January, 1864, the appellee filed his bill in the Superior Court of Baltimore City, praying to be allowed to redeem the nineteen shares of stock, and for an account of the dividends received by the appellant thereon. The court (Martin, J.,) dismissed the bill for want of jurisdiction. From this action of the court, Bryson appealed, and the decree of the Superior Court, was reversed with costs, and it was decided that the sale of the nine shares of stock was valid and conclusive, but that Rayner, himself, having become the purchaser of the ten shares, his relationship as to them, was not altered by the sale, and Bryson was entitled to redeem them, and to have an account of the dividends received thereon by Rayner. See *Bryson v. Rayner,* 25 Md. 430. The cause was remanded to the Superior Court, and by that court, on the 28th of September, 1866, referred to the auditor for settlement of an account. On the 15th of September, 1866, Catherine S. McKim, Administratrix of John S. McKim, laid an attachment on a judgment against Bryson, in the hands of Rayner. Three accounts were stated *by the auditor, which were rejected **475** by the court, and "substituted account A.," was ratified and confirmed on the 25th of May, 1867. This account allowed Bryson all the dividends received by Rayner, on the ten shares of stock, with interest from the time of their receipt until the 25th of May, 1867, and also Bryson's costs in the Court of Appeals. The order of the court, in addition to the ratification of this account, decreed the payment to Bryson, of $2,399.03, with interest thereon from the 25th of May, 1867, and his costs in the Superior Court as also in the Court of Appeals. From this order of the 25th of May, 1867, the present appeal was taken.

The cause was argued before Bartol, C. J., Nelson, Stewart and Miller, JJ.

*Benjamin F. Horwitz,* for the appellant:

The decree from which this appeal was taken should be reversed, because the account allows interest on the dividends from the date of their receipt to the 25th of May, 1867. This court, in *Bryson v. Rayner,* 25 Md. 431, said: " If the pledgee

purchase at his own sale, and afterwards continues to hold the stock, he is· to be regarded as *still standing in the relation of bailee,* and responsible for all the duties and liabilities incident to it, or in other words, the bailment is not by that act alone broken up and destroyed," and again, in the same case "we regard him (Rayner) as still maintaining as to these ten shares the character of a bailee. They must be considered still in his hands to secure the payment of the thousand dollar loan with all interest upon it; all moneys and dividends *received* upon them whilst in his hands to be properly accounted for by him." The question, therefore, is, can a bailee of stock, standing in his name, be made responsible for interest on dividends which he is obliged to collect in order to preserve them, and in reference to which no fraud is alleged, and on which it is not pre-

**476** tended to be *shown that he made or received interest? This court in its opinion says, and all the authorities say, that a bailee, like any other person standing in a fiduciary capacity, is to account for what he *receives* and no more, and therefore is not responsible for interest except when received. *Selleck v. French,* 1 Am. Lead. Cases, 519, 522, 359; *Nelson v. Hagerstown Bank,* 27 Md. 51; *De Bernales v. Fuller,* 2 Camp. 426; *De Havilland v. Bowerbank,* 1 Camp. 52; *Knight v. Reese,* 2 Dallas, 182; *Vance v. Vance,* 5 Monroe, 525; *Johnson v. Eicke,* 7 Halstead, 319; *Hudson v. Tenney,* 6 N. H. 456; Edwards on Bailments, 240, 241; Story on Bailments, secs. 99, 194, 292, 339.

Rayner was certainly *bound* to collect and preserve these dividends; for if they had been lost by his neglect, he would have been responsible for them, as no one else *could* collect them. But again, there is never any liability for interest until there is a liquidated amount demanded. *Wood v. Hickok,* 2 Wend. 501; Story on Const. sec. 1026; *Wilson v. Felder,* 7 Richardson's Eq. 405. In this case there never has been a "liquidated demand." If Bryson had resorted to his remedy at law —trover—he could not have recovered interest. *Stirling v. Garritee,* 18 Md. 468.

The *order* of the court below is also erroneous, because it allows *compound* interest. The true rule is, that "when interest is allowed, it is computed by the auditor from the time the money became due up to the time of stating the account, *with*

*interest* on the *principal* sum only from that time until paid. By this mode of computation and decree compound interest is excluded. *Winder v. Diffenderffer,* 2 Bland, 204; *Boarman v. Israel,* 1 Gill, 381.

The order is also erroneous in directing Rayner to pay Bryson's costs in the Superior Court. This court reversed the decree of the Superior Court " with costs," but, not " with costs in both courts," and, therefore, Bryson only recovered his costs in this court. 5 Md. 612, Appendix.

*This order is clearly wrong, as it directs the pay- **477** ment of the money to Bryson in utter disregard of the rights of Rayner, as garnishee, and of Mrs. McKim, the attaching creditor, and in direct violation of the Code of Pub. Gen. Laws, Art. 10, secs. 11 and 18.

Garnishees are always protected by the courts. What protection would the payment of this money by Rayner to Bryson, afford him against the suit of Mrs. McKim? Could he plead it in bar? If not, he might be compelled to pay the money twice. Certainly no court of justice should place him in such a predicament.

*George H. Williams,* for the appellee:

In response to the objection of the appellant that he should not be made to pay interest on the dividends received by him, the following authorities were referred to: Fisher on Mortgages, 91 Law Lib. 511, marg.; *Montgomery v. Calland,* 14 Simons, 81; *Quarrell v. Beckford,* 1 Madd. Ch. 151; *Wilson v. Metcalfe,* 1 Russell, 535.

Miller, J., delivered the opinion of the court.

Upon the former appeal in this case, the Court of Appeals decided that the relation previously existing between the parties, as to the ten shares of stock, was not destroyed by their sale at the Stock Board, the pledgee himself having been the purchaser at that sale, and still continuing to hold them. The main question upon the present appeal relates to the correctness of the account ratified by the court, in respect to the charge of interest on the dividends received by the appellant

after payment of the loan for which the stock was pledged as collateral security.

In sustaining the jurisdiction in equity, this court, on the former appeal, held that though the transaction was not technically a mortgage, yet the stock being pledged as security for a debt, it partook of the _nature of a mortgage,_ was subject to redemption, and the pledgor being entitled to a return **478** *of the identical property pledged, a bill to redeem could be maintained. The appellant's liability for interest must, therefore, be measured by that of a mortgage in possession and holding on under circumstances such as are disclosed in this record, after the mortgage debt has been paid. In many of its features the case is strikingly like that of _Quarrell v. Beckford,_ I Madd. Ch. 151, where the rule as to interest was first established. The mortgagee there claimed to hold under a decree of foreclosure. Proper parties were made to the original bill to foreclose, but the suit having abated by the death of the complainant before decree, it was revived against the same defendants, the parties to whom the equity of redemption had, in the meantime, been assigned by the mortgagor not being made parties to the bill of revivor. When the bill to redeem was subsequently filed by these assignees, the mortgagee relied upon the decree of foreclosure as protecting his possession and exempting him from all liability to account. The defect as to parties was fatal to this defense, and an accounting was ordered. The Master's report showed the mortgage debt was paid off by the receipts of rents and profits, and a considerable balance was in the hands of the mortgagee for some time prior to the filing of the bill, and large sums were subsequently received during the litigation, which was protracted for many years, by reason of difficulty in obtaining proof on which to state the account. At the hearing, upon the Master's report, the principal question was the liability of the mortgagee for interest, and it was held that whilst the mistake as to the effect of the decree of foreclosure exonerated him from any imputation of fraud or intentional misconduct in holding on after his debt had been paid, it did not exempt him from payment of interest on the surplus so received by him. The point was then presented, from _what period_ was the interest to be charged, and with respect to that the Vice Chancellor, Sir Thomas Plumer,

said : " I am of opinion it should be *from the filing of the bill,* for at that period the demand was made and ought to have *been complied with according to the justice of the **479** case.*" In the present case the sale at the Stock Board was made in November, 1861, after previous notice of the intention to sell had been given to the appellee. There is no pretense of fraud in the sale ; on the contrary, every effort was made to sell to third parties, and after being offered at the board the stock was bought in by the appellant at $80 per share, a price higher than could then have been obtained for it in the market. The appellee was promptly informed, and presented with an account of the sale, but made no offer to redeem, and no demand until the filing of this bill on the 24th of December, 1863. There is no ground for imputing bad faith or intentional misconduct to the appellant in the transaction, and, whilst he is liable for interest, he is bound to pay it only from the time the bill was filed. The account shows that the loan, principal and interest was paid on the 20th of December, 1862, by dividends then received, leaving a small balance of $21.08 then due the appellee. From that date dividends were received, from time to time, up to the period of filing the bill, and on each of such dividends the appellant is charged with interest from the date of its receipt. This we have shown is error. He should be charged with interest on the aggregate amount of dividends received, when the bill was filed, from that date to the time of stating the account, and on each dividend subsequently received from the date of its receipt. It has been argued that the question of interest is *res adjudicata,* and the expression in the opinion of this court, on the former appeal, that as to these shares " the complainant is entitled to the relief he asks," is relied on to sustain this position. If we should assume this to be true as to the appellant's liability for interest, still it does not determine from what period the charge is to be made, for if we look to the prayer for relief in the bill, we find that though interest is there claimed on the surplus, if any, in the appellant's hands, yet nothing is said as to the time from which it is to be computed.

*It has been further argued for the appellee that the **480** account should have been stated with annual rests, and, as the case must go back for a re-stating of the account, it is proper

that this question should be decided.    It is not insisted these rests should be made for the purpose of a more speedy liquidation of the principal of the debt, for in this particular the account accords with the settled practice in this State. *Scott v. Chapline*, 4 H. & McH. 91.  The object is, by means of these rests, to charge the appellant with compound interest on the balances in his hands after payment of the loan.  We find no facts or circumstances in this case to warrant such a charge. Compound interest was not even claimed by the complainants' counsel in *Quarrell v. Beckford, supra*, and is never allowed except where there has been intentional misconduct or gross negligence on the part of the party withholding the money.  In *Wilson v. Metcalfe*, 1 Russell, 530, where the debt was paid before bill filed, annual rests were allowed against the mortgagee in possession, but in that case the answer, not only denied that any part of the debt had been paid by receipts of rents and profits, but it was argued, (and such appears to have been the case,) that the mortgagee and her representatives had, by every artifice of litigation, prolonged the controversy for *nearly twenty-five years*, and thereby continued in possession and enjoyment of the estate.  In *Montgomery v. Calland*, 14 Simons, 78, the debt had not been paid when the bill was filed, but was paid at the time the defendant put in his answer which denied this fact, and set up a claim (on what ground does not appear) to the equity of redemption.  The decree directed the Master to state the account with annual rests, but at the hearing upon further directions, the Vice Chancellor said:  "With respect to the balances, it seems to me that as there has been improper conduct on the part of Calland, (for he has been receiving what was in fact the plaintiff's money and on a *false suggestion*,) the right thing to do is to refer it back to the Master to compute interest at four per cent. upon the balances in his **481** hands since the \*mortgage was paid off."  We do not understand from this that the claim for compound interest was sustained, but rather the contrary, and that the case merely decides that where the debt was paid off after bill filed, interest on the balances should be charged from that time.  Such appears to be the view taken of this case in Fisher on the Law of Mortgages (91 Law Lib.) 511; and in Coote on Mortgages, (70 Law Lib.) 532.  The general rule is stated by the latter

author , 70 Law Lib. 531, thus : "·If the mortgagee was already paid in full at the time of filing the bill, or on earlier demand made by the mortgagor or by some other incumbrancer, he will be charged with interest on the balance then in his hands, and on all subsequent annual balances due from him, not, in general, compound interest, but simple interest from the end of each year, as the rents were received." In *Archdeacon v. Bowes,* 13 Price, 353, a mortgagee in possession under a covenant that he should receive the rents and profits until his debt was paid, received more than his debt, and retained the surplus for a considerable time after receiving notice, from a subsequent incumbrancer, that he would be held liable for interest, unless the money was paid over in aid of other incumbrancers, and it was held, upon the authority of *Quarrell v. Beckford, supra,* that he should pay interest, but not compound interest, on the amount and on the annual balances in his hands from the time of receiving such notice. It is impossible to liken the present case in its circumstances to that of *Wilson v. Metcalfe, supra,* or to that of *Diffenderffer v. Winder,* 3 G. & J. 311, where compound interest was allowed. The appellant answered with sufficient promptness, making a full disclosure of the sale of the stock, and relied upon that as a bar to any account of further dividends ; and there has been no unnecessary delay in the litigation. He had the right to set up this defense, and though it turned out by the decision of this court to be unavailing, his conduct therein, as already stated, is free from any imputation of fraud or bad faith. We are clearly of opinion the claim for compound interest should *not be sustained. *Hanson v.* **482** *Worthington,* 12 Md. 418 ; *Dennis v. Dennis,* 15 Md. 73.

There is no error in charging the appellant with the costs in this court of the former appeal, because such was the effect of the decree of reversal with costs. In reference to the costs in the Superior Court, we are of opinion they also should be paid by the appellant. The general rule in England, upon a bill to redeem, is that where the debt is not paid at the time of filing the bill to allow the mortgagee his costs, but where the mortgage debt was paid at the time of bill filed or on previous demand, and the mortgagee has retained balances, the costs will be charged to him. Coote on Mortgages, 531 ; *Archdeacon v. Bowes,* 13 Price, 353.

Nor is there any error in that part of the court's order which directs the money to be paid to the complainant for the use of the parties to whom the same is entered, in disregard of the claim of Mrs. McKim, an attaching creditor. It appears an attachment on a judgment, in favor of Mrs. McKim against the appellee, was laid in the hands of the appellant on the 15th of September, 1866. We are, however, satisfied from the evidence in the record, that the whole claim against the appellant involved in the present case had been *bona fide* assigned, one-third to Mr. Williams and two-thirds to Mr. Stevenson, and the cause entered for their use prior to the laying of the attachment in the appellant's hands. The exceptions of the attaching creditor were overruled, apparently on this ground, and she has acquiesced in this decision, not having taken any appeal. Under such circumstances the appellant will be protected in paying according to the court's order against any claim on account of this attachment.

The order is, however, erroneous in directing *interest* to be paid on the aggregate amount of principal *and interest* found due by the account, until paid. It is true that in judgments at law the interest on the debt may be calculated down to the date of the judgment, and the whole will then bear interest from that date, but this is the effect of an express statutory **483** *provision, (Code, Art. 27, sec. 15,) which has never been extended to decrees in equity on bills to account, where the account embraces charges of interest. The rule in Maryland, in such cases, is correctly stated by Chancellor Bland, in *Winder v. Diffenderffer,* 2 Bland, 204: "On a bill for an account for the recovery of a legacy or the like, where interest is allowed, it is computed by the auditor from the time the money became due, up to the time of stating the account, with interest on the *principal sum only,* from that time until paid."

The order appealed from will be reversed and the cause remanded, in order that the account may be re-stated in accordance with the views expressed in this opinion. The appellant is entitled to the costs of this appeal.

*Order reversed and cause remanded.*