MARGARET TAYLOR AND JAMES TAYLOR *vs.* THOMAS
    BRUSCUP AND MARY HENRY, Administrators of
    Joseph Henry.

*Orphans' Court—Administrator—Concealment, its defini-
tion—Jurisdiction.*

On an application by an administrator to the Orphans' Court, invoking
its authority to require the production of any part of the personal
estate of his intestate, he must allege in his application, in express or
equivalent terms, that the same is concealed in order to give the Court
jurisdiction.

The simple withholding of property is not concealment, secrecy being an
essential ingredient of the act of concealment.

Courts of special limited jurisdiction must be confined to the express letter
of their authority.

The Orphans' Court has no jurisdiction over matters of trust and
confidence.

APPEAL from the Orphans' Court of Baltimore City.

Joseph Henry died in September, 1866.  In June pre-
vious he, with his sister, Margaret Taylor, with whom he
was then living, went to the Eutaw Savings Bank and
had her name inserted in his bank-book as the joint owner
of a deposit he had to his credit in that bank, the same
to be subject to the order of either of them.  Shortly
after the death of the said Joseph, letters of administra-
tion upon his estate were granted by the Orphans' Court
of Baltimore City to the appellees.  On the 27th of Sep-
tember the appellee Thomas, acting administrator, filed
his petition in the said Orphans' Court, alleging that the
appellant Margaret, after the death of her aforesaid
brother, had taken his bank-book, and praying for an
order requiring her and her husband, James Taylor, to
produce the same, or any moneys which they might have
drawn on account of said bank-book belonging to said
deceased.  On the 6th of October following the appel-
lants appeared and asserted the ownership in Margaret of

the money deposited in the Eutaw Savings Bank by title paramount to the claim of the appellees; denied that it was assets of the estate of her deceased brother, and pleaded to the jurisdiction of the Court. Plenary proceedings were then had, and a great deal of testimony was taken relative, in a great measure, to an alleged will of the deceased Joseph. After hearing, the Court passed an order requiring the appellants to appear and to deposit in Court the sum of $1,818.13, being the amount withdrawn by the appellant Margaret from the Eutaw Savings Bank. From this order the present appeal was taken.

The cause was argued before BOWIE, C. J., BARTOL, WEISEL and CRAIN, J.

*Joseph L. Brent,* for the appellants.

The Orphans' Court had no jurisdiction over the controversy. It is claimed by virtue of the 238th section of Article 93 of the Code of Public General Laws. The basis of the jurisdiction under this Article is concealment, and this section requires that such concealment should be alleged in the petition filed by the administrator. This allegation was not made in this case, and therefore the plea to the jurisdiction should have been sustained. The section also requires that the Court should be satisfied that there has been a *concealment;* but the Court does not affirm that such proof had been adduced. And throughout the voluminous testimony there is not one word bearing on the concealment of property. Everything was done openly. Margaret Taylor drew out the money on the advice of Mr. Sterling, her attorney, and the Savings Bank paid it over, after notice, on the advice of Mr. J. Mason Campbell, its attorney. The section of the Code invoked to sustain the jurisdiction of the Orphans' Court is only intended to apply to specific property, capable of identification and delivery. Here the money was loaned

to the bank, which is the legal effect of the deposit, particularly as it was drawing interest. *Story on Bailments*, *sec.* 88. Hence, there was only a right of action against the bank existing at the time of the death of Joseph Henry, and that right of action survived to Margaret Taylor and not to the administrators. How can a party conceal a right of action? That the Orphans' Court had no jurisdiction is settled conclusively by the decisions of *Spencer, Exc'r of Ragan, vs. Ragan*, 9 *Gill*, 482, and *Waring's Adm'r vs. Edmonds*, 11 *Md. Rep.*, 433. An adverse claim, based on title, ousts the Orphans' Court of jurisdiction, except by consent. *Art.* 7, *sec.* 7, *of Code of Pub. Gen. Laws.*

Even if there had been a concealment, the money which the appellants were required to bring into Court was not assets of the estate. By the terms of the deposit it was the joint property of the decedent and Margaret Taylor, with the right of survivorship. Upon the death of Joseph Henry, instead of vesting in his legal representatives, it vested in Margaret. In order to vest the Orphans' Court with jurisdiction, the money itself must be assets; not a right of action to the money, but the money itself.

Now, by right derived from the decedent, the title of the money vested at his death in Margaret; and even if she took, as trustee, which is denied, yet the only right of the administrator was to make her properly administer or discharge the trust, or to sue for money had and received, &c. The money then was lawfully in the possession of Margaret Taylor; and being thus lawfully possessed by her, the Orphans' Court could not assume fraudulent conduct to consist merely in the possession of what it was lawful for her to possess. If she held as a mere trustee, then the rights of the estate are to be enforced in another forum.

*John H. Ing*, for the appellees.

The Code of Pub. Gen. Laws, Article 93, section 238,

provides: "If an administrator shall believe that any person conceals any part of his decedent's estate, he may file a petition in the Orphans' Court of the county in which he obtained administration, alleging such concealment," and the Court may, "if satisfied, upon examination of the whole case, that the party charged has concealed any part of the personal estate of the deceased, order the delivery thereof to the administrator." Does this terminate the prerogative of the Court? By no means. The same section empowers the Court to enforce obedience to such order by attachment, imprisonment or sequestration. What means this word "Conceal?" Manifestly it is the synonym of withholding. *Proverbs* 12, *v.* 23; *Act of* 1719, *ch.* 14, *sec.* 7. Conversion is concealment. When administration is granted, the property of the deceased is vested in the administrator, by "relation," from the time of the death of the intestate. *Winchester, Trustee of Gooding, vs. The Union Bank of Maryland,* 2 *G. & J.,* 80; *Cecil, Adm'r of Owens, vs. Negro Rose et al.,* 17 *Md. Rep.,* 102. The moment the debtor dies the law asserts the rights of creditors, and takes the property into its hands, and makes or directs the distribution of it according to their legal priority. This rule a testator cannot defeat by his will. *The State of Maryland vs. The Bank of Maryland,* 6 *G. & J.,* 230.

Do the appellants claim the Bank-book as a gift? If so, was it a *donatio mortis causa,* or a *donatio inter vivos?* Is there any evidence in this case showing an intention on the part of Joseph Henry to give to his sister, Mrs. Taylor, the whole of his estate, to the exclusion of his aged mother, towards whom he had shown a proper filial regard; and to the exclusion of his other sisters and his brothers? The reason why he gave Margaret the authority to draw the money was, that she could write and send it to him as he needed it. The alleged gift to Mrs. Taylor cannot be sustained as a donation *mortis causa* or

as a donation *inter vivos;* such a gift cannot be by mere parol. The rule of law in either case is, that a delivery of the thing intended to be given is essential to the perfection of the gift. The gift should be full and complete at the time ; there must be a parting by the donor with the legal power and dominion over the thing intended to be given, and leaving nothing to be done by him, or his executor, to perfect it. *Pennington, Adm'r of Patterson, vs. Gittings' Ex'r,* 2 *G. & J.,* 216 ; *Bradley and Wife vs. Hunt, Adm'r of Jack,* 5 *G. & J.,* 58. Supposing the entry in the bank-book authorized Mrs. Taylor to draw out the whole deposit in the Savings Bank, and to transfer it to herself during her brother's life-time, yet inasmuch as she did not do so, it was not a valid gift either in law or equity, for want of delivery. Was the bankbook which Margaret Taylor took from the trunk of the deceased, part of his estate ? We think it was ; and as such the administrator was entitled to claim it.

The jurisdiction of the Orphans' Court as defined by the 230th section of Article 93 of the Code of Pub. Genl. Laws, is very broad : "To administer justice in all matters relative to the affairs of deceased persons." And by the following section, it may enforce obedience to, and execution of its decrees in the same ample manner as the Courts of equity in this State. If such language do not confer upon the Orphans' Court full jurisdiction, what words will give it ? It is complained on the part of the appellants, in respect to jurisdiction, that the Orphans' Court does not, in its order, recite a case of concealment.

What does the Court do when it states it has read and considered the petition, and answer, heard evidence, and the arguments of counsel, and therefore orders and decrees to be deposited in Court the sum of money withdrawn by the appellant from the Eutaw Savings Bank ? Does it not grant the prayer for relief by an apt judgment and decree, under full consideration of the entire

merits of the whole case, upon petition, answer, evidence and argument of counsel? Was the Orphans' Court obliged to set out *in totidem verbis*, the Code under which it was proceeding?

There was in this case no pretext of incidental power or constructive authority—no exercise of jurisdiction not expressly conferred by law, but the true, just and faithful administration of justice in a matter relative to the affairs of a deceased person.

[Other points were discussed by Counsel, which are omitted as unnecessary to be reported, inasmuch as this Court has decided the Orphans' Court had no jurisdiction.]

BOWIE, C. J., delivered the opinion of this Court:

In a case between the same parties, decided by this Court on the 2d of March, 1867, an order in the nature of a supersedeas was issued by this Court, suspending proceedings pending this appeal. The question now arises on the appeal taken the 26th October, 1866, from the original decree of the Orphans' Court, requiring the appellants to appear and bring into that Court the sum of $1,818.33, alleged to have been withdrawn by the appellant Margaret, on the 28th of September, ult., from the Eutaw Savings Bank, by virtue of a certificate of Deposit, of which the following is a copy:

14,096.    Joseph Henry, Margaret Taylor, and the survivor of them, subject to the order of either of them.
1866.

| | | |
|---|---|---|
| April 20—Rec'd eighteen hundred and fifty dollars. . . . . . | $1,850 | 00 |
| E. T. OWENS. | | |
| June 2—Paid fifty dollars. . . . | 50 | 00 |
| Balance. . . | 1,800 | 00 |
| April 20—Interest to June 1st, '66. . | | 33 |
| Sept. 28—Interest. . . . . | 18 | 00 |
| | $1,818 | 33 |

Paid to Margaret Taylor, Sept. 28th, 1866.

The power of the Court to pass this order, is said to be derived from the 238th section of the 93d Article of the Code of Public General Laws. This section authorizes an administrator, if he shall believe any person conceals any part of the decedent's estate, to file a petition in the Orphans' Court alleging such concealment, and the Court shall compel an answer on oath, and if satisfied upon an examination of the whole case, that the party charged has concealed any part of the personal estate of the deceased, may order the delivery thereof to the administrator, and may enforce obedience to such order by attachment, imprisonment, or sequestration of property. This section is, "*pro tanto*," a transcript of sec. 12, ch. 115, of the Act of 1831, to which was annexed a proviso to the effect, that in case either party, after answer put in on oath, shall require it, the Court shall direct an issue or issues to be made up and sent to any Court of law which may be most convenient under all circumstances for trying the same, as provided in the Act of 1798, ch. 101, to which it was a supplement.

A similar provision, applying to all issues raised before the Orphans' Court by petition and answer, is embodied in the Code. If the parties to this controversy had desired to avail themselves of the benefit of issues, to be tried by a jury, could any issue involving the fact of concealment have been properly framed upon the petition and answer filed in this case? If not, the power of the Court must be found in some other section of the Code. Concealment is the ground of jurisdiction in such cases in the Orphans' Court as essentially as accident, fraud or mistake are grounds of jurisdiction in a Court of Equity; and in both Courts the facts giving jurisdiction must be alleged in express or equivalent terms.

The Code, Article 93, Section 252, declares: "The Orphans' Court shall not, under pretext of incidental power or constructive authority, exercise any jurisdiction

not expressly conferred by law." This is but a statutory recognition of a principle of the common law, that Courts of special limited jurisdiction must be confined to the express letter of their authority.

The petition of the appellees does not impute any concealment to the parties. There is an allegation that the trunk of the deceased was opened after his death and the bank-book taken out, which allegation is traversed and facts alleged to show the subject matter in dispute was not the property of the deceased, but of the respondents ; and when the certificate of deposit is examined "*per se,*" it certainly shows a *prima facie* right of possession, if not of property, in one of the appellants.

The argument of the appellee, that the word " conceal " is manifestly the synonym of withholding, is not sustained by any lexicographer we have consulted, or the popular sense of the term. Secrecy is an essential ingredient of the act of concealment. " To hide or withhold from observation, to cover or keep from sight," are the meanings technically and popularly conveyed by the word " conceal." It can scarcely be imagined that the extraordinary power of requiring an answer upon oath, with the summary process of attachment, sequestration and commitment, were to be exercised by a Court of special limited jurisdiction in every case, in which the administrator or executor should allege a third person withheld property which belonged to the estate of the deceased.

It was only in cases where concealment rendered the act *quasi* criminal, and the usual remedies at law or in equity, difficult or impossible, that this peculiar jurisdiction was granted to the Orphans' Courts. A different interpretation would revive the pretensions of the spiritual Courts, which by entertaining suits "*pro laesione fidei,*" attempted to exercise the powers and jurisdiction of Courts of Equity, "until finally prohibited by the

unanimous concurrence of all the Judges." 3 *Chitty's Black.*, 52.

In the language of Lord Coke, " these particular jurisdictions, derogating from the general jurisdiction of the Courts of common law, are ever strictly restrained, and cannot be extended further than the express letter of their privileges will most explicitly warrant." 2 *Inst.*, 543, *cited in* 3 *Black. Com.*, 85, *in margin.*

The evidence tending to show that Mrs. Taylor was the trustee of the fund, for the benefit of the decsased or his next of kin or devisees, concedes the question of concealment. If she occupies this relation to the fund, she is legally entitled to its possession, and accountable in a Court of Equity for the faithful administration of it.

The Orphans' Court has no jurisdiction over matters of trust and confidence. The decree of the Orphans' Court being erroneous for want of jurisdiction, it is unnecessary to examine the testimony introduced by the parties to support their several pretensions.

*Decree reversed with*
*costs to the appellants.*

