(Decided 3rd March, 1874.)

MICHAEL SMITH *vs.* HENRY STOCKBRIDGE, Administrator of JAMES O'NEILL, deceased.

*Testamentary Law: Code, Article 93, sections 143, 238—Ex parte account and distribution by Administrator—Jurisdiction of Courts—Delay as a Defence—Agency of wife for Husband.*

Where a will which has been admitted to probate is declared by the Court of Appeals to be void, administration with the will annexed, granted upon an *ex parte* application, and distribution made under such administration, are also void.

An alleged nuncupative will having been held void by the Court of Appeals, the Orphans' Court revoked its letters of administration *c. t. a.* formerly issued to M. and granted letters of administration to H. who thereafter filed a petition on the 18th of March, 1871, under Article 93, section 238 of the Code, charging that M. concealed and withheld from him the assets. M. answered under oath, denying the allegations of the petition, and thereupon on the 17th of May, 1871, the Court dismissed the petition, no proof having been taken to sustain it. Two days afterwards, H. as administrator, filed a bill in the Court of Equity against M., his wife, who was legatee under the alleged will, and others, charging as in the previous petition, and praying an account and injunction and vacation of certain conveyances. Pending

Smith *vs*. Stockbridge, Adm'r.

proceedings under this bill, on the 17th of April, 1872, H. as administrator, filed another petition in the Orphans' Court, praying to surcharge and falsify the last administration account of M passed *ex parte* in February, 1866, by which the balance of the estate was "retained by M. in right of his wife" as legatee.     Upon appeal from an order that said account be reopened for this purpose, HELD :

1st. That the second petition, though analogous to the first, was entirely distinct in its object and nature.

2nd. That the second petition was not too late.

3rd. That no possible conflict could occur between the two Courts in the exercise of their respective powers, and that the reformation of the account in the Orphans' Court was ancillary to the proceedings in Equity.

4th. That the receipts of rent by M's wife as legatee, after the account of Feb. 1866, if *bona fide* and *suo jure*, were the receipts of M. as administrator, she being his agent *pro tanto*.

APPEAL from the Orphans' Court of Baltimore City.

The facts are stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, ALVEY and ROBINSON, J.

*Philip C. Friese* and *William P. Preston*, for the appellant,

Referred to *Davis and Wife vs. Patton*, 19 *Md.*, 120 ; *Cole's Lessee vs. Cole*, 1 *H. & J.*, 572 ; *Story's Eq. Jur.*, sec. 543.

*Henry Stockbridge*, for the appellee,

Relied on 4 *Bac. Abr.*, 100 ; 2 *Williams on Ex'rs*, 1629, (*5th Am. Ed ;*) *Seighman vs. Marshall's Adm'r*, 17 *Md.*, 571 ; *Davis vs. Bagley*, 40 *Ga.*, 181, (2 *Am. R.*, 570 ;) *Hanson and Wife vs. Worthington*, 12 *Md.*, 420 ; *Maddox vs. State, use of, &c.*, 4 *H. & J.*, 539 ; *Story's Eq. Jur.*, sec. 543a.

BOWIE, J., delivered the opinion of the Court.

· The present appeal is the sequel of the case of *O'Neill and others vs. Smith, Adm'r c. t. a.* of *James O'Neill, dec'd,* decided in this Court on the 31st January, 1871, and reported in 33 *Md.*, 569. The main facts, on which it turns, are as follows:

On the 2nd of July, 1864, the Orphans' Court of Baltimore City, admitted to probate, certain affidavits, as the nuncupative will of James O'Neill, deceased, by which all the estate of the deceased was given to Mary Smith, wife of the appellant, who thereupon took out letters of administration *c. t. a.*, and passed two accounts, in the last of which, dated the 13th of February, 1866, he credits himself with "all the rest and residue of the personal estate bequeathed to his wife by the last will," and "retained in right of his wife," amounting to $3723.55. The next of kin, and heirs at law of the deceased, on the 27th of April, 1866, filed in the Orphans' Court of Baltimore City, a petition, praying the proceedings previously had in the matter of the estate of James O'Neill, might be opened, and the case re-examined; that the letters granted the appellant might be revoked, and the petitioners allowed to receive their respective proportions of his estate.

This petition, having been answered by the appellant, was by an order of the Orphans' Court, passed on the 30th of April, 1869, dismissed.

On an appeal by the heirs at law and next of kin, to this Court, the order of the Orphans' Court, dismissing the same, was reversed, and the cause remanded for further proceedings. *Vide* 33 *Md.*, 574.

Among the reasons assigned by this Court, for reversing the order or decree appealed from, were the invalidity of the supposed nuncupative will, and that the petitioners were non-residents, and the Orphans' Court, neither directed summons, nor order of publication for the heirs

at law, and they had not, therefore, either actual or constructive notice.

In obedience to the decree of this Court, the Orphans' Court on the 10th of February, 1871, by their order, reciting the decree of this Court, reversing their previous order, and remanding the cause, adjudged, ordered and decreed, that the letters of administration granted to Michael Smith, on the personal estate of James O'Neill, be revoked, and that their order dismissing the petition of Arthur O'Neill, and others, be revoked, and further ordered, that letters of administration, on the estate of the deceased, be granted to Henry Stockbridge, Esq.

Mr. Stockbridge, as administrator of James O'Neill, on the 18th of March, 1871, filed a petition in the Orphans' Court of Baltimore City, reciting the previous proceedings of the Court in the matter of the estate of James O'Neill, stating his appointment as administrator, and charging that Smith, the administrator with the will annexed, disregarding the action of the Court, *concealed, withheld and did not deliver the assets of the estate to the petitioner*, and prayed that Smith might be summoned and required to answer.

Smith appeared and answered this petition, denying all its allegations; no proof was taken to sustain the petition, and the Orphans' Court, relying upon the answer, as true, on the 17th of May, 1871, ordered and adjudged that the petition be dismissed with costs.

On the 17th of April, 1872, Stockbridge, as administrator of O'Neill, filed another petition, charging that the administration account of the estate of James O'Neill, passed by Smith, on the 13th of February, 1866, was inadvertently allowed to be passed, without notice to the parties interested, and was procured to be passed by fraud; that it did not contain a true statement of all the moneys received by Smith; that the petitioner had then recently discovered the account was false and fraudulent, and

prayed leave to surcharge and falsify said account; that the Court would order all omissions to be supplied, and all errors corrected, and that said Smith be summoned to show cause, why said account should not be re-opened, etc.

The appellant appeared and demurred to this petition. His demurrer being overruled, he thereupon answered, relying in part upon the previous action of the Orphans' Court, upon the first petition of the appellee, which was dismissed, and further pleading that the appellee, as administrator of O'Neill, on the 19th of May, 1871, filed in the Circuit Court of Baltimore City, his bill of complaint, against the appellant and wife and others, charging, as in said petition was alleged, and praying an account, which bill of complaint was still pending, in said Court, and undecided, and denying the allegations of the petition.

To this answer a special replication was filed, and witnesses being examined and the cause heard, the Orphans' Court, by its order of the 10th of June, 1873, adjudged that Michael Smith, the appellant, should state another account, charging himself with certain specific sums, "and that in his said account, he shall bring down the specific property, belonging to said estate, as a balance due said estate, and retained by him as such, to await its distribution by order of this Court." From which order, the said Smith appealed. The appellant assumes three distinct grounds for the reversal of the order appealed from.

1st. That the estate of James O'Neill was fully administered before the petition of the appellee was filed in the Orphans' Court; and the surplus of the estate of the deceased having been passed over to the legatee, by the appellant, and allowed by the Orphans' Court, in the second and final account, the legatee took under the will or supposed will of James O'Neill, according to law, notwithstanding any informality in passing said account.

2ndly. The appellant, having assented to the bequest of the leasehold property, and permitted the legatee to collect the rents, was not chargeable with them.

3rdly. That the order of the Orphans' Court, dismissing the appellee's first petition, not being appealed from or reversed, was conclusive; and the pendency of the bill of the appellee, against the appellant and others, in the Circuit Court of Baltimore City, deprived the Orphans' Court of jurisdiction in the premises.

The first objection, is the same substantially, with the defence relied on by the appellant in the case of *O'Neill, et al. vs. Smith,* 33 *Md.* It was insisted in that case, that it was too late to have the proceedings re-opened and re-examined, but this Court held, that without admitting that mere lapse of time would operate as a bar in any case, they were of opinion that the appellants were not precluded by any supposed delay from contesting the validity of the will.

The probate of the will was not in solemn, but in common form, the parties in interest were not summoned, or notified, and the proceedings were therefore not conclusive.

It follows as a legal consequence, that if the will was void, the administration granted with the will annexed, upon an *ex parte* application, must be so. The accounts passed by the administrator *c. t. a.* were not passed as a final account, "on some day by the Court approved and under the Court's direction and control," as required by the Code, Art. 93, sec. 143. *Hanson and Wife vs. Worthington,* 12 *Md.,* 418; *Conner vs. Ogle,* 4 *Md. Ch. Dec.,* 426.

The Orphans' Court did not make distribution "*inter partes.*" The account was an *ex parte* act of the administrator "*in pais,*" and did not therefore conclude the parties entitled to the estate. *Ibid.*

The petition to re-open the account, surcharge and falsify, was filed a little more than fourteen months after the grant of the letters of administration to the appellee.

There is no analogy we think, between the case of *Davis and Wife vs. Patton,* 19 *Md.,* 120, cited by the appellant, and the present.

That was a case of intestacy, in which a distribution had been made by the Orphans' Court, to the husband, "who intermarried with the sister of the deceased."

It was held "the wife being the distributee, in whose right the allotment was made, it was not in the power of the Orphans' Court to deprive her of the property, and their act must be interpreted according to its legal effect." There was no question as to the effect of the revocation of the will upon the intermediate acts of the administrator, *c. t. a.;* no conflict as to the right of administration. The title of the legatee in this case, depending entirely upon the validity of the will, if that was void, the distribution made under it, without the authority of a Court of competent jurisdiction, must be so likewise.   The receipts of the rent, therefore, by the legatee, if *"bona fide"* and *"suo jure,"* were the receipts of the administrator *c. t. a.,* she being his agent, *pro tanto.*

The third point of the appellant, that the appellee is concluded by the prior proceedings, has two aspects.

1st. The effect of the decree, dismissing the first petition.   2nd. The effect of the proceedings in Equity.   The gist of this point is, that the proceeding of the appellee, in his first petition, and by his bill in Equity, had the same object in view, with the petition to re-open and correct the appellant's accounts.

This is a misapprehension on the part of the appellant.

The first petition was filed under the 238th section of the 93d Article of the Code.   Referring to which, this Court in the case of *Taylor vs. Bruscup & Henry, Admrs.,* 27 *Md.,* 226, said, "It was only in cases where conceal-

Smith *vs.* Stockbridge, Adm'r.

ment rendered the act quasi criminal, and the usual remedies at law or in equity, difficult or impossible, that this peculiar jurisdiction was granted to the Orphans' Courts.''

The charge of concealment required proof of a peculiar nature to sustain it, as appears from the case cited, which the Courts would not suffer to be supplied by inference.

The second petition, although analogous, was entirely separate and distinct in its object and nature. The primary object of the second was, to amend the records of the Orphans' Court, by correcting the accounts the appellant had procured to be passed, and which are *prima facie* evidence, for the appellant and his sureties. No other Court had the power to correct the record but that in which it remained.

The bill in Equity was filed against the appellant and wife and others.

It contained, it is true, many of the allegations of the petition, but it charged a conspiracy between the appellant and wife and others, to obtain possession of certain property, and to make certain conveyances, to cheat and defraud the heirs of James O'Neill, and prayed an account and injunction, and that the conveyances might be declared void, etc.

No possible conflict could occur between the several Courts, in the exercise of their respective powers. The reformation of the accounts in the Orphans' Court, was ancillary to the proceedings in Equity. While they remained in their original form, they constituted a *prima facie* defence to the relief prayed by the complainant's bill, and contributed to the success of the fraud, which that bill was intended to defeat. The order of the Orphans' Court is affirmed.

*Order affirmed.*

(Decided 4th March, 1874.)