JOSEPH COUDON, Sole Surviving Executor of
George P. Whitaker, Deceased, *vs.* CARRIE
D. UPDEGRAF et als.

*Executor as trustee: presumption of law—. Jurisdiction of
equity; Orphans' Courts. Legatees: right to sue for
legacy. Wills: construction; residuary legatees;
distribution; life estate; stocks; stock dividends.*

Where the same party is both executor and trustee, a trust
fund by operation of law will be considered in his hands
in his capacity as trustee after the time limited by law for
the settlement of the estate; and the probate of the will
and the taking out of letters testamentary by the executor
will be considered as sufficient evidence of the acceptance
by him as trustee of the trust.                    pp. 74-75

A Court of Equity is the appropriate tribunal to administer
the trust; and any party interested in the trust estate has a
right, under sec. 219 of Art. 16 of the Code, to apply to
that Court to require the executor as trustee to give bond.
p. 75

The Orphans' Courts have no jurisdiction over the administra-
tion trusts.                                       p. 75

Legatees have a right to file a bill in equity against an executor
for the recovery of their legacies; and where it appears that
many of the parties are non-residents the case is one which
demands the larger powers of an Equity Court properly and
satisfactorily to deal with the subject-matter and the parties.
pp. 75-76

In the interpretation of wills the cardinal canon of construc-
tion is that the intention of the testator, ascertained from
the whole instrument, and read in the light of the surround-
ing circumstances existing at the date of its execution, must
prevail, provided it does not conflict with some rule or law
of property.                                       p. 78

The best evidence of a testator's intention is what he says in his will.      p. 78

After making numerous specific legacies, a testator, by the residuary clause of his will, provided that all the rest and residue of his estate should be divided into equal parts and be distributed among his children; by other provisions the testator had left certain property to his wife for her life, or during her widowhood; he also devised to his executors certain shares of stock in trust, from the income thereof to pay various sums of money to, or on account of, his wife during her life or widowhood; his will then provided that upon the widow's death, or her remarriage, whichever should first occur, the said stock and any unexpended income therefrom should revert to the residuary estate; and it was still further provided that should the income of the said stock be insufficient to make the payments required to, or on account of the wife, then the executors were authorized to supply any deficiency from the residuary estate: The widow was 80 years old; the income from the stock left in trust for the payment of her income was more than sufficient to pay the income, and the income showed large accumulation and surplus. *Held,* that it would be unreasonable, in the absence of language imperative requiring it, to hold that the testator intended to tie up the whole of a large estate during the life or widowhood of his wife and thereby deprive his children and other legatees of the possession and enjoyment of their part of his estate for an indefinite time.      p. 78

After the death of the testator by a stock dividend of 100% the amount of the stock so left in trust for the widow, and the income from which the payments were to be made to her or on her account, had doubled in value; it further appeared that the stock and the accumulation of dividends held by the trustee were amply sufficient to gratify the provisions of the will made for the benefit of the wife. *Held,* that a division and distribution should be made, under a decree so framed as properly and safely to guard and make secure the provision made by the testator for the wife.      · p. 80

Where a stock dividend based upon the earnings of the company is declared it is to be considered as *income.*          p. 80

*Decided January 9th, 1911.*

Appeal from the Circuit Court for Cecil County (Pearce, C. J., Adkins and Hopper, JJ.).

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner and Stockbridge, JJ.

*Frederick T. Haines* (with whom was *George A. Blake* on the brief), for the appellant.

*John S. Strahorn* and *James M. Munroe,* for the appellees.

Burke, J., delivered the opinion of the Court.

George P. Whitaker, a resident of Cecil county, died on the 30th day of December, 1890, leaving surviving him a widow and five children. He had made and executed a last will and testament, which was duly admitted to probate by the Orphans' Court of Cecil County on the 5th day of January, 1891, and by which he appointed Joseph R. Whitaker, Nelson E. Whitaker and Joseph Coudon, executors, and to whom letters testamentary were granted on January 6th, 1891. Nelson E. Whitaker has since died, and Joseph R. Whitaker resigned his office as executor, so that Joseph Coudon is now the sole surviving executor of the will.

George P. Whitaker died seized and possessed of a large and valuable estate which has been, since the grant of letters thereon, administered exclusively in the Orphans' Court of Cecil County.

It appears by the 16th account of the surviving executor, filed in that Court in March, 1910, that the estate in his hands then amounted to $279,595.62.

The bill in this case asks first, that the Court assume jurisdiction of the trust created by the will of George P. Whitaker, interpret the will and direct the trustee in the

execution of the trust; secondly, that the trustee be required to give bond for the faithful discharge of his duties; thirdly, that the widow of the deceased, Mary L. Whitaker, one of the defendants, be required to make discovery of an ante-nupital agreement made between herself and George P. Whitaker, and that Joseph Coudon, the surviving executor be required to make discovery as to the investments and extent of the estate; and fourth, that a division and distribution of the residue of the estate be made among those entitled.

The defendants demurred to the whole bill, and also to certain parts thereof. The Court overruled the demurrer to the whole bill and to all the parts, except the demurrer to such part of the bill which asked that Mary L. Whitaker, the widow, be required to make discovery of the ante-nuptial contract. The demurrer to this portion of the bill was sustained. This appeal was taken by the defendants from the ruling on the demurrer.

The substantial and controlling questions presented by the appeal are: First. Has the Court of equity under the facts appearing in the record jurisdiction to assume the administration of the estate and to require the executor as trustee to give bond? Secondly. Can a division and distribution of the residuary estate now be made?

A number of the parties to the suit and who are interested in the residuary estate are non-residents of the State of Maryland. There is a trust created by the will and the property embraced by the trust is granted to the executors as trustees, and there is imposed upon them certain active and specific duties with respect to the trust.

It is alleged in the bill and admitted by the demurrer that the surviving executor and trustee has loaned to the Whitaker Iron Company, a non-resident corporation, the sum of $79,-595.62 the money of the estate "on call and without security."

The property constituting the trust estate must be treated as being in the hands of the surviving executor in his capacity as trustee. It is well settled that where the same party is both executor and trustee, a trust fund by operation of law

will be considered in his hands in his capacity as trustee after the time limited by law for the settlement of the estate, and that the probate of the will and the taking out of letters testamentary will be considered as sufficient evidence of the acceptance by him of the trust.

This doctrine of transfer by operation of law has found expression in many adjudged cases in this Court. *Seegar* v. *State,* 6 H. & J. 162; *Watkins* v. *State,* 2 G. & J. 220; *Hanson* v. *Worthington,* 12 Md. 418.

It is equally well settled in this State that the Orphans' Court has no jurisdiction of the administration of a trust created by a will. *Conner* v. *Ogle,* 4 Md. Ch. 425; *Taylor* v. *Bruscup,* 27 Md. 219; *State, use of Gable,* v. *Cheston,* 51 Md. 352.

There being a trust created by the will a Court of equity was the appropriate tribunal in which it should be administered, and any party interested in the trust estate had a right to apply to that Court to require the executor as trustee to give bond. The provision of the will creating the trust falls within section 219, Article 16 of the Code which provides that: "In all cases where a trustee has been appointed by a will or deed to execute any trust, and any person interested in such trust shall make it appear to the Court that it is necessary for the safety of those interested in the execution of the trust, that the trustee should give bond and security for the due execution of the trust, the Court may order that such bond be given, on or before such day as the Court shall name; and if the bond, with such security as the Court shall approve, be not given by such trustee, then the Court may remove such trustee and appoint one in his stead, who shall give such bond and security as the Court may require." This section was intended to afford full protection to all persons interested in the trust property, and we are of opinion that the allegations of the bill are quite sufficient to authorize the Court to exercise its power vested in it by the act.

It has long been settled that legatees have a right to file a bill in equity against an executor for the recovery of their

legacies and where it appears, as it does in this case, that many of the parties are non-residents we can have no doubt that under the principles announced in *Alexander* v. *Leakin,* 72 Md. 199, and *Hyatt, Trustee,* v. *MacGill,* 80 Md. 253, this case is one which demands "the larger powers of an equity Court properly and · satisfactorily to deal with the subject-matter or the parties."

The question as to whether a division and distribution of the rest and residue of the estate can be made prior to the death or remarriage of the widow of George P. Whitaker involves a construction of his will.

By the second item of the will the testator referred to an ante-nuptial contract between himself and wife which he expressly affirmed, and he directed his executors to see that the money payments provided for in the contract were regularly made. The amount to which she was entitled under the contract is not stated in the will, nor does it appear in the record. He then devised and bequeathed an estate for life, or during her widowhood to her in certain real and personal property. He then provided as follows: "I also give and bequeath to my said executors two hundred and fifty shares of the capital stock of the Whitaker Iron Company at Wheeling, in West Virginia, in trust, the dividends from which are to be applied in the order and to the extent as follows: First, that there shall be regularly paid to my said wife, Mary L., so much thereof as may be necessary to fully comply with all the terms of said ante-nuptial contract; second, so much thereof as may be necessary to provide for the repairs, insurance, taxes and maintenance of the dwelling as heretofore provided for; third, that four hundred dollars be paid to my said wife annually in addition to the sum provided for and stipulated to be paid to her in said ante-nuptial contract, and the residue, if any, be held in trust and so invested as may seem best in the judgment of said executors, that the objects of said bequest may be regularly and promptly complied with during the life or

widowhood of my said wife, and at and upon her death
or the termination of her widowhood, whichever may sooner
occur, I will that said two hundred and fifty shares of stock
together with any residue of dividends of the same not then
expended for the purposes hereinbefore set forth shall revert
to my residuary estate; but should the said dividends aris-
ing from the said two hundred and fifty shares of stock be
not sufficient at any time to enable my executors to make
the payments and discharge the trust hereby created for
the benefit and behoof of my said wife and hereinbefore pro-
vided, I hereby expressly authorize and empower them to
supply any deficiency that may exist from time to time from
my residuary estate.

In the third item he conferred power upon his executors
to sell all his real and personal estate, except his stock in
the Whitaker Iron Company and the George P. Whitaker
Company. By the fourth item he gave to certain named
grandchildren ten shares each of the capital stock of the
George P. Whitaker Company. This stock he directed to
be delivered to them at the expiration of five years from
his death.

The fifth item is as follows: "Fifth, It is my intention and
desire, and I do hereby direct that all the rest, residue and
remainder of my estate and property not hereinbefore devised
and bequeathed shall be divided into five equal parts or
shares, and that the same be distributed among my five
children, namely, Caroline Naudain, Nelson E. Whitaker,
Henry C. Whitaker and Cecil N. Whitaker and Edmund
S. Whitaker, equally, share and share alike; and the advance-
ments made to my said several children as will appear from
the charges against them on my books at my death I consider
a part of my residuary estate, and the aggregate indebted-
ness of my children as shall appear from my books shall be
taken into account before making distribution, and from
the distributive share of each child his or her indebtedness
at the time of my death shall be taken and deducted, etc."
He then provided that the distributive share of his son

Edmund S. Whitaker should be held in trust and the interest, profits and income thereof paid to him during his life. This is followed by pecuniary legacies to certain designated persons.

In the construction of a will, "the cardinal canon around which all others centre is this, that the intention of the testator when ascertained from the whole instrument, or from the instrument as read in light of surrounding circumstances existing at the date of its execution, must be given effect if that intention does not antagonize or conflict with some rule of law of property." *Woman's Foreign Missionary Society* v. *Mitchell,* 93 Md. 202. The best evidence of the testator's intention is found in what he has said in his will.

When the will is read in the light of these principles the construction contended for by the appellants, viz.: that the testator intended to postpone the division and distribution of the whole residuary estate until after the death or the re-marriage of his widow cannot be accepted, first, because such a construction would be an unreasonable one, and, secondly, because it does not accord with the plain meaning of what the testator has said in his will.

It would be harsh and unreasonable thing, in the absence of language imperatively requiring it, to hold that the testator intended to tie up the whole of this large estate during the life or widowhood of his wife, and thereby deprive his children and the other legatees of the possession and enjoyment of any part of his estate for an indefinite time. He has not said that this was his intention, and if he had intended this it is reasonable to suppose that he would have so declared in plain language. On the contrary, the clear meaning and import of the language used show, we think, that this was not his intention. The specific legacies are given in absolute and unqualified terms, and the time of their payment is not expressly postponed, except in the case of the bequest to the grandchildren mentioned in the fourth item of the will. The shares of stock bequeathed to them

he directed should be delivered to the legatees after the expiration of *five years* from his death.

There is a direct and absolute present gift to his five children in equal shares of all the rest, residue and remainder of his estate. These children under the will take vested interests, and the pecuniary legacies were payable in one year after the testator's death, there being in the will no time fixed for their payment, except in the one instance mentioned.

In disposing of the residuary estate the testator used plain, direct and unmistakable language. "It is my intention and desire, and I do hereby direct that all the rest, residue and remainder of my estate, etc., shall be divided into five equal parts or shares and that the same be distributed among my five children," is the language used.

The contention of the defendants that this division and distribution of the entire residuary estate is postponed until the death or remarriage of the widow by the following clause in the second item of the will: *"But should the said dividends arising from the said two hundred and fifty shares of stock be not sufficient at any time to enable my executors to make the payments and discharge the trust hereby created for the benefit and behoof of my said wife as hereinbefore provided, I hereby expressly authorize and empower them to supply any deficiency that may exist from time to time from my residuary estate."*

This clause must receive such a construction as will harmonize with the other provisions of the will and thereby effect the general intent of the testator. It was clearly his intention to make certain, secure and permanent the provision made for his wife, and for that purpose the executors by the clause quoted were authorized and empowered to apply such portion of the residuary estate as might be necessary; but they had power to apply *only such portion* of that estate which might be required for that purpose. It could never have been his intention to have authorized them to

retain *the whole* residuary estate. The language employed does not reasonably and fairly imply such an intention.

At the time of the creation of the trust for the benefit of his widow, the stock of the testator in the Whitaker Iron Company consisted of two hundred and fifty shares, worth $25,000.00. These shares constituted the trust estate. In 1901 a stock dividend was declared by the Whitaker Iron Company whereby there was awarded to the executor and trustee another two hundred and fifty shares of the stock of said company thereby increasing the amount of said stock in the hands of the trustees to five hundred shares, worth $50.000.

If this stock dividend was based upon the earnings of the company, and the company had the power to so distribute it, and this power was validly exercised, then this extra two hundred and fifty shares, declared as a stock dividend, must be treated as income from the trust estate. *Coast Line Dividend Cases,* 102 Md. 73.

It is alleged in the bill that the widow of George P. Whitaker is now over eighty years of age, and that in the nineteen years of the administration of the trust not only has the income on the shares of stock placed in trust been sufficient to meet the requirements of the will made in her behalf; but that a large surplus has been accumulated by the trustees from the dividends on the extra stock of the Whitaker Iron Company and from other sources, amounting now to $79,595.62.

Where it appears, as it does by this record, that the shares of stock and the accumulation of dividends held by the trustees are amply sufficient to gratify the provision of the will made for the benefit of the wife, we can see no reason why a division and distribution may not now be made by the Court under a decree so framed as properly and safely to guard and make secure the provision made by the testator for his wife.

> *Decree affirmed, the costs to be paid out of the estate.*