# CHARLESTON.

Security Trust Co., Trustee, v. Kate D. Rammelsburg
*et als.*

Submitted September 24, 1918.   Decided October 8, 1918.

1. Trusts—*Life Tenant and Remaindermen—Cash Dividend—"Income."*

     Ordinarily, cash dividends declared by a corporation and paid on the shares of its stock go to the life tenant, under a trust providing for payment of the income, interests and profits of such shares to a life tenant, and the corpus of the estate to a legatee in remainder. (p. 702).

2. Same—*Life Tenant and Remaindermen—Stock Dividend—"Income."*

     Stock divedends declared on shares so held, although based upon net earnings or profits of the corporation, accruing after the creation of the trust, go to the legatee in remainder. (p. 702).

(Williams and Ritz, Judges, dissenting).

Appeal from Circuit Court, Ohio County.

Bill of conformity by the Security Trust Company, testamentary trustee, against Kate D. Rammelsburg and others for instructions as to disposition of stock dividend. From the decree, complainant appeals.

*Reversed.*

*James W. Ewing,* for appellant.

*J. Bernard Handlan,* for appellees.

Poffenbarger, President:

This appeal is from a decree on a bill of conformity filed by a trustee acting under the provisions of a will, creating a trust, for advice and instruction as to whether a stock dividend declared on certain shares of the capital stock of the Wheeling Steel and Iron Company shall be delivered over and transferred to the life tenant of the estate or retained and kept as part of the corpus of the estate for the benefit of the remainder-man. The court decreed the new shares representing the stock dividend to the life tenant, holding them

82 W. Va.

to be income, interest or profits within the meaning of the will, and the trustee has appealed.

The will places the fund in the hands of the trustee in trust for the use and benefit of Frank R. Wheat, the testator's son, for and during his natural life, the trustee to pay over to him the "income, interests and profits therefrom," for and during his natural life, and, at his death, to pay over, transfer, convey and deliver the principal to his child or children begotten by him in lawful wedlock and living at his death and the descendants of such children so begotten as may be dead, and, in default of such children and descendants, to the testator's heirs. Another provision absolves the sums paid to the life tenant from liability for his debts.

Among the assets placed in the hands of the trustee, there were certificates for 334 shares of the capital stock of the Wheeling Steel and Iron Company, a corporation. In February, 1917, a twenty per cent. stock dividend was declared out of earnings made by the corporation, as shown on its books, Jany. 4, 1913, a date prior to that of the death of the testator. As to this dividend, no question arises. It is retained by the trustee and swells his holdings to 401 shares. The dividend in question, one of twenty-five per cent., amounting to 100¼ shares, was declared on or about March 1, 1918, out of a surplus shown on the books, as of Jany. 30, 1918, and earned after the death of the testator.

In many jurisdictions, dividends declared in cash, bills, notes, stocks of other corporations and other property, unless clearly amounting to a distribution of capital, as in the case of liquidation of the corporation and distribution of its assets, are regarded as income and go to the life tenant, under such a trust as the one involved here, and stock dividends, as parts of the capital belonging to the corpus of the trust estate and going to the remainder-man, without reference to the date or manner of the accumulation of the fund in respect of which the cash dividend is declared and paid or the stock dividend declared and issued. *Gibbons* v. *Mahon,* 136 U. S. 549; *Towne* v. *Eisner,* 245 U. S. 426; *Adams* v. *Adams,* 139 Mass. 449; *Hemenway* v. *Hemenway,* 181 Mass. 406; *Lyman* v. *Pratt,* 183 Mass. 58; *Bromwell* v. *An-*

*thony,* 189 Mass. 442; *Brinley* v. *Grou,* 50 Conn. 66; *Boardman* v. *Mansfield,* 79 Conn. 634; *Boardman* v. *Boardman,* 78 Conn. 451; *Smith* v. *Dana,* 77 Conn. 543; *Billings* v. *Warren,* 216 Ill. 281; *Bluin* v. *Gullett,* 208 Ill. 473; *De Koven* v. *Alsop,* 205 Ill. 309. *Re Brown et al.* 14 R. I. 371; *Richardson* v. *Richardson,* 75 Me. 570, 574; *Bouche* v. *Sproule* C. R. 12 App. Cas. 385, decided by the House of Lords; *Brander* v. *Brander,* 4 Ves. 800; *Irving* v. *Haristoun,* 4 Pat. Sc. App. 521; *Paris* v. *Paris,* 10 Ves. 185; *Clayton* v. *Gresham,* 10 Ves. 288; *Witts* v. *Steere,* 13 Ves. 363; *Re Hodgens,* 11 Sr. Eq. 99; *Barclay* v. *Wainewright,* 14 Ves. 66, 80; *Preston* v. *Melville,* 16 Sim. 163.

The theory of these decisions is that, until actually severed from its corporate assets, the earnings of a corporation cannot be deemed or held to be in any sense, an income accruing to the holders of its shares. As profits or income, they legally belong to the corporation. It has full and complete title to them and dominion over them and right to treat them as its capital and use them as such in its business. In point of fact, they are generally so used, although sometimes carried on the books as surplus. They are not the property of the shareholder until divided and paid or delivered to him in such manner and to such an extent as to effect a transfer of the title and possession from the corporation to him. While they remain the property of the corporation, they enhance the value of the shares, but that does not make them the property of the shareholders nor an accrual to them as income any more than the enhancement of the value of real estate or personal property owned by an individual constitutes income. Issuance of shares representing it neither increases nor diminishes the value of the shareholder's interest in the corporation. It merely divides that interest, not its assets, title to which he does not hold, into a greater number of shares of less value per share. Nor can he, by any means short of dissolution of the corporation and distribution of its assets, obtain its earnings or make them individual income, against the will of the corporation. He cannot compel the declaration of a dividend, however great the earnings may be. When a distribution of assets occurs

as a result of liquidation and winding up of the corporation, it is regarded as a distribution of capital, not profits or earnings, even though earnings of the corporation may constitute part of the assets. The creator of the trust is deemed to have had this legal relation in mind and to have contemplated only severed and paid over earnings or even capital, as income or profits accruing upon the stock. In other words, he is deemed to have meant and intended the life tenant to have only what passes, in point of title and possession, from the corporation to the trustee and all of it, except in clear cases of distribution of capital.

In some other jurisdictions, the courts look beyond what they seem to regard as a technical basis of solution of the question, and give weight to the practical and equitable aspect of the situation. Of course, they class all ordinary cash dividends as income. In dealing with stock dividends, they make the disposition thereof as between the life tenant and the remainder-man depend upon the origin of the assets represented by the dividend certificates. If they are based principally upon earnings since the creation of the trust estate, they go to the life tenant, because they are deemed to be practically and equitably, though perhaps not legally, earnings of the original shares or profits accruing thereon. Thus in *McLouth* v. *Hunt,* 154 N. Y., 179, it was held that ''The courts must determine them according to the nature and substance of the thing, and are not concluded from treating such earnings as income by the form of their distribution or by the terms employed by the corporation.'' This case adheres to numerous decisions of the courts of New York previously decided and referred to in the opinion. The rule enunciated and applied by them seems to have been somewhat modified by the decision in Re Osborn, 209 N. Y., 450, holding that ''Extraordinary dividends, payable from the accumulated earnings of the company, whether payable in cash or stock, belong to the life beneficiary, unless they entrench in whole or in part upon the capital of the trust fund as received from the testator or maker of the trust, or invested in the stock, in which case such extraordinary dividends should be returned to the trust fund or apportioned

between the trust fund and the life beneficiary in such a way as to preserve the integrity of the trust fund.'' So limited, the New York rule practically agrees with that of Pennsylvania, under which the supposed income is ascertained by taking the difference between the market value of all the original shares and the aggregate market value of all the shares after the addition of those issued for dividends. *Earp's Appeal,* 28 Pa. St. 368; *Boyer's Appeal,* 224 Pa. St. 144; *Smith's Appeal,* 140 Pa. St. 344. The apportionment feature of the so-called Pennsylvania Rule is a mere modification of the equitable practice referred to, having for its purpose more accurate enforcement of the principle in its application. Its purpose is to give the trust fund and the life tenant, respectively, as nearly exact right respecting accumulated profits as is practicable. It does not affect the main question, beyond its tendency to prove practicability of an equitable and fair distribution or transfer of stock dividends to the life tenant. What is sometimes termed the American Rule, allowing stock dividends to go to the life tenant, is recognized and enforced in several other states. *Hite* v. *Hite,* 93 Ky. 257, 19 L. R. A. 173; *Thomas* v. *Gregg,* 78 Md. 545; *Lord* v. *Brooks,* 52 N. H. 72; *Pierce* v. *Burroughs,* 58 N. H. 362; *Van Doren* v. *Olden,* 19 N. J. Eq. 176; *Ashurst* v. *Field,* 26 N. J. Eq. 11; *Blarcom* v. *Doger,* 31 N. J. Eq. 793; *Cobb* v. *Fant,* 36 S. C. 1; *Bryan* v. *Aiken,* (Del.) 86 Atl. 674; *Re Heaton,* (Vt.) 96 Atl. 21; *Soehulein* v. *Soehulein,* (Wis.) 131 N. W. 739; *Pritchett* v. *Nashville Trust Co.,* (Tenn.) 33 L. R. A. 856.

The criticisms of the so-called Massachusetts Rule, aside from the charge of inequity, are that it is one of mere convenience and follows English decisions, some of which have been criticised occasionally by English jurists, particularly Lord Eldon, who once remarked that the distinction drawn between cash dividends and stock dividends was ''too thin.'' In Earp's Appeal, cited, the court having ascertained the earnings represnted by the stock dividend, said: ''That sum is rightfully the property of the appellants. The managers. might withhold the distribution of it for a time, for reasons beneficial to the interests of the parties entitled. But

they could not, by any form of procedure whatever, deprive the owners of it, and give it to others not entitled. The omission to distribute it semi-annually, as it accumulated, makes no change in the ownership. The distribution of it among the stockholders in the form of certificates has no effect whatever upon the equitable right to it.'' This is the substance of the argument in support of the rule, found in practically all of the decisions that have adopted it. They make a distinction between the capital of the trust estate and the capital of the corporation, which it is contended, the Massachusetts rule overlooks or ignores.

In no other connection has it ever been claimed that any person other than the holder of the shares of a corporation has any equitable interest in its assets, whether treated by it as capital, earnings or profits, wherefore the assumption of equitable title to accumulated earnings or profits, in the life tenant who does not hold the shares, seems to lack foundation in either legal or equitable principle. The shares belong to the trust fund and all equitable right in the assets belong to the shares and goes to the holder thereof. If they appreciate in value, the appreciation is his, and, if they depreciate, the loss falls upon him. All corporate enterprises are more or less hazardous and the risks attending the use of the capital invested in them, whatever its origin may have been, do not end until it is withdrawn. When anything may be taken out of the assets and distributed to the stockholders as individual property, consistently with the interests of the corporation, is left to the judgment and discretion of the directors or stockholders acting as a body, and the real value of capital stock held in the form of shares is not safely determinable either by the state of its books or business at any particular time, or the market value of its shares. Hence, to hand over to the life tenant certificates representing assets of the corporation still in use by it and technically converted into capital, by the issuance of the certificates, obviously affects the actual and ultimate value of the original shares, in a manner entirely different from that incident to the declaration and payment of a cash dividend equal to the stock dividend declared. A stock dividend

is often declared under circumstances that would not permit the declaration of a cash dividend of an equal amount. Stock dividends are generally based upon mere estimated values of assets that might prove to be far too high in an effort to realize on them in cash. In such cases, and they are numerous, the award of a stock dividend to the life tenant is nothing more nor less than a transfer to him of part of the capital of the trust fund. Take the instance in which an industrial plant starts with a deficiency of capital, runs largely on borrowed money, invests that money in grounds, buildings, machinery and the establishment of a business, pays off the debts out of the profits, has no actual money beyond what is necessary for working capital, and cannot pay a cash dividend, but declares a stock dividend to the end that the magnitude of its profits may not be so apparent, that cash dividends, which the company cannot well afford to pay, may not be demanded and that the capital actually invested may be represented by stock. Continued operation works rapid depreciation in the valuation of practically all of the property represented by the new stock. Losses may occur, sufficient to prevent payment of cash dividends on the stock so increased, depreciate its market value, discourage the stockholders and directors, and impair the financial standing of the company, but not of such magnitude as would have produced any of these results, if the stock dividend had not been declared. These are some of the inequities of a division of what is technically, legally, logically and substantially both trust fund capital and corporation capital, between the trust fund and the life tenant, by the award of a stock dividend to the latter. Ordinarily, a stock dividend is declared for reasons of convenience and prevention of withdrawal of assets from the corporate business. A cash dividend is declared with unequivocal intent and express purpose to permit withdrawal of such assets. In hardly any case in which a stock dividend is declared, would a cash dividend be permitted or found to be even possible. The bases and purposes of the two classes of dividends are radically different.

As has been suggested, a mere enhancement of the value

of property is not income in any sense. A farm, timber land, coal land, or vacant property suitable for business or residence purposes and advantageously located, may immensely increase in value and yet not yield any income at all, or not increase the income from it a penny. Increased value of corporation stock due to accumulations of net earnings of the corporation bears a very strong analogy to these cases. There are earnings and gains, it is true, but they are not the gains of the shares. The increased value of the shares is a mere incident of the gains of the corporation, while the increased value of land may be an incident of general development or the yield of a larger income for some reason. The greater the dividends actually paid on stock, the higher its value, provided the dividends are legally and economically justified. Likewise, the larger the rental or other income yielded by real estate, the higher its value, provided it is not so used as to work physical injury to it. When corporate profits are not distributed in the form of cash dividends, but merely estimated and used as capital, they bear a close analogy to the profits derived from the use of land or other property and expended on it in the effectuation of repairs and improvements. They are not separable, severed or available income, and, therefore, not ordinarily regarded as income at all. There are profits and an enhancement of the value of the corporate assets and the shares, but whether the stock so enhanced will ever produce a distributable income is problematical. The accumulated earnings remain in the hands of the corporation and may be lost ultimately, and the life tenant, given a voice in the management of the corporate business by the award of shares to him, may contribute to the disaster.

Stock dividends are so exceptional in character and utterly different from cash dividends, interest, rents and other sources of ordinary income, that the creator of a trust fund in shares of corporation stock, with a provision for payment of the income thereof to a life tenant or tenant for years, cannot be deemed to have intended to include stock dividends in the income so to be disposed of, in the absence of designation thereof as income. This conclusion is based

upon well settled rules of interpretation. Things exceptional in character are never legally deemed to be included or embraced in general terms of disposition, prohibition or regulation of a class or classes of normal or ordinary subjects mentioned. This principle is the basis or meaning of the rule *ejusdem generis*. Take the numerous cases of implied exceptions from the operation of statutes referred to in the opinion in *Coal and Coke Ry. Co.* v. *Conley and Avis,* 67 W. Va. 129, at pages 159 to 166. A British statute defining the jurisdiction of the admiralty courts extended, in terms, to the case of "any sea-going ship." The owners of one American ship sued another American ship in a British court of admiralty, on account of injuries resulting from a collision of the two ships. The court said: "This is a British Act of Parliament, and it is not, I think, to be presumed that the British Parliament could intend to legislate as to the rights and liabilities of foreigners. In order to warrant such a conclusion, I think that either the words of the Act ought to be express or the context of it to be very clear." *Cope* v. *Doherty,* 2 De G. & J. 614. This is a rule of plain common sense, applying in the interpretation of contracts as well as statutes. The sources of ordinary income are well and commonly known and a disposition or gift of "income, interest and profits," without more, cannot be deemed, under the rules and principles of construction, to carry anything but that which is ordinarily known as income, interest and profits. A stock dividend, if income at all, is not of that class. It does not segregate. It merely gives an undivided interest in something not separated nor distributed. It admits the owner to corporate rights and privileges that do not accompany or attend a cash dividend. It is founded upon an estimate of values, not ability to pay. It is generally declared to avoid payment of cash and because of inability to do so. It may represent nothing but appreciation in the values of property bought with the original capital, not earnings at all. Nobody can tell what it represents without resort to the books, accounts and assets of the corporation. If these circumstances and elements do not make it excep-

tional and abnormal, it would be difficult to find an exceptional income.

The decree complained of is erroneous and will be reversed and the shares in question will be decreed to be a part of the trust fund and awarded to the trustee.

*Reversed.*

RITZ, JUDGE, (*dissenting*) :

The degree of finality which ordinarily attaches to a decision of the United States Supreme Court has made me hesitate to dissent in this case from the opinion of the majority of my brethren. The reasoning of the opinions expressing views different from that I entertain does not convince me, it does not even create a doubt in my mind as to the correctness of the decree appealed from. It seems to me that the majority opinion lays too much stress upon the relation of the stockholder to the corporate entity, and loses sight of the fact that the corporation is in no wise interested in the controversy. It can make no difference to the corporation which of the parties gets the stock dividend. It will have just the same assets and property when it is given to the life tenant as when given to the remainderman. The whole question must be, what is the right between the remainderman and the life tenant? Can it be doubted that when the trust was created the testator intended the life tenant to have everything the property set aside for his benefit earned during his life? What matters it whether these earnings are paid in money, in stock or in some other species of property? It is said that when a stock dividend is declared, the corporation parts with nothing, that it retains all of the physical assets. Quite true. But that is not the question. Does not the stockholder get something? When it issues its shares of stock as a dividend, it as effectually parts with the control over those shares as it does with the money paid upon the declaration of a cash dividend. This view is very aptly expressed by the Supreme Judicial Court of Massachusetts in the case of *Tax Commissioner* v. *Putnam,* 227 Mass., 522, 116 N. E. 904, as follows: ''It was the issuance to the stockholder of a new thing of value, transferable, transmissible

and saleable, separate and apart from that which before he had possessed. . . . In essence the thing which had been done is to distribute a symbol representing an accumulation of profits, which, instead of being paid out in cash, is invested in the business, thus augmenting its durable assets. In this aspect of the case the substance of the transaction is no different from what it would be if a cash dividend had been declared with the privilege of subscription to an equivalent amount of new shares. The stock dividend was declared strictly out of an accumulation of earnings applied to business uses, and not out of increased market value of capital investment. That which the stockholder had before was a fractional interest in the property of the corporation. So far as concerned the accumulation of profits, there was a possibility that they might be paid out in whole or in part as a cash dividend by authority of the corporation. By the issue of the stock dividend that possibility is gone, and the stockholder now has evidence of a permanent interest in the corporate enterprise, of which he cannot be deprived." This language perhaps seems strange coming from that court, but in that case it was held that a stock dividend was income and subject to be taxed as such under the laws of Massachusetts. I confess my mind is not subtle enough to conceive any reason why these stock dividends are income for the purpose of taxation, and are not income as between the life tenant and the remainderman. Under that decision these dividends go to the remainderman because they are not income, and then when he gets them they are taxed by the state because they are income. The Supreme Court of Kentucky in the case of *Hite* v. *Hite*, 19 L. R. A. 173, so aptly expresses the views I entertain that I quote the following from the opinion: "Where a dividend, although declared in stock, is based upon the earnings of the company, it is in reality whether called by one name or another, the income of the capital invested in it. It is but a mode of distributing the profit. If it be not income, what is it?' If it is, then it is rightfully and equitably the property of the life tenant. If it be really profit, then he should have it, whether paid in stock or money. A stock dividend proper is the issue of new shares paid for

by the transfer of a sum equal to their par value from the
profit and loss account to that representing capital stock;
and really a corporation has no right to declare a dividend
either in cash or stock, except from its earnings; and a singu-
lar state of case—it seems to us, an unreasonable one—is
presented if the company, although it rests with it whether
it will declare a dividend, can bind the courts as to the proper
ownership of it, and by the mode of payment substitute its
will for that of the testator, and favor the life tenants or
the remaindermen, as it may desire. It cannot, in reason, be
considered that the testator contemplated such a result. The
law regards substance, and not form, and such a rule might
result not only in a violation of the testator's intention, but
it would give the power to the corporation to beggar the life
tenants, who, in this case, are the wife and children of the
testator, for the benefit of the remaindermen, who may per-
haps be unknown to the testator, being unborn when the will
was executed. We are unwilling to adopt a rule which to us
seems so arbitrary, and devoid of reason and justice. If the
dividend be in fact a profit, although declared in stock, it
should be held to be income. It has been so held in Penn-
sylvania and many other states, and we think it the correct
rule.'' It would serve no good purpose to review in detail
the authorites supporting this view. It is supported by the
New York Court of Appeals in the cases of *In re Osborne,*
209 N. Y. 450, and *McLouth* v. *Sexton,* 154 N. Y. 179; by the
Supreme Court of Pennsylvania in the cases of *Earp's Ap-
peal,* 28 Pa. St. 368, *Smith's Estate,* 140 Pa. St. 344, and
*Moss's Appeal,* 83 Pa. St. 264; by the Supreme Court of New
Hampshire in the cases of *Holbrook* v. *Holbrook,* 74 N. H.
201, and *Lord* v. *Brooks,* 52 N. H. 72; by the Supreme Court
of Delaware in the case of *Bryan* v. *Aiken,* 86 Atl. 674; by
the Supreme Court of Maryland in the cases of *Thomas* v.
*Gregg,* 78 Md. 545, *Atlantic Coast Line Dividend Cases,* 102
Md. 73, *Northern Central Ry. Dividend Cases,* 94 Atl. 338,
*Miller* v. *Deposit Co.,* 96 Atl. 766, and *Coudon* v. *Updegraff,*
117 Md. 71; by the Supreme Court of Tennessee in *Pritchett*
v. *Nashville Trust Co.,* 96 Tenn., 472; by the Supreme Court
of Kentucky in the cases of *Hite* v. *Hite,* 93 Ky., 257, and

*Cox* v. *Gaulbert,* 148 Ky., 407; by the Supreme Court of Vermont in the case of *In re Heaton's Estate,* 96 Atl. 21; by the Supreme Court of South Carolina in the cases of *Wallace* v. *Wallace,* 90 S. C. 61, and *Cobb* v. *Fant,* 36 S. C. 1; by the Court of Chancery of New Jersey in *VanDoren* v. *Olden,* 19 N. J. Eq. 176, and *Ashhurst* v. *Field,* 26 N. J. Eq., 1; by the Supreme Court of Mississippi, in the case of *Simpson* v. *Millsaps,* 31 So., 912; by the Supreme Court of Wisconsin in the case of *Soehnlein* v. *Soehnlein,* 146 Wis., 330; by the Supreme Court of Minnesota in the case of *Goodwin* v. *McGaughy,* 108 Minn. 248; and by the Supreme Court of Iowa in the case of *Kalback* v. *Clark,* 133 Ia. 215. The curious practitioner will find the authorities extensively collated in monographic notes to the cases of *Re Heaton,* L. R. A. 1916 D. 201; *In re Osborne,* Am. Cases, 1915 A, 298; and *Holbrook* v. *Holbrook,* 12 L. R. A. (N. S.), 768.

In the opinion of the majority some analogy is found between stock dividends, or rather the property from which stock dividends are declared, and the increase in the value of the property because of its location, or because of changed values for any other reason. If this stock dividend was declared out of enhanced values of the corporate property, undoubtedly it would not be earnings, but the allegation in the bill in this case is that it is declared from actual earnings of the company since the death of the testator. I would readily admit that declaration of a stock dividend which did not have the earnings of the company for a basis would not be income, and so do all the authorities above cited.

It is also argued that stock dividends are frequently declared when cash dividends would be impracticable, the corporation finding it best to keep the earnings to meet strained conditions that may arise in the future. This may be entirely true, but I am unable to see what difference it would make to the corporation whether a dividend declared out of the earnings is held to be income or principal. It would have just the same property to meet future strained conditions if the stock was in the hands of a life tenant as it would have if it was in the hands of the remainderman. There seems to be some fear that a holding that these stock dividends de-

clared out of earnings are income would be disastrous to the business of the corporation. This position, however, is entirely assumed without any real basis for it. The corporation's affairs are not differently affected in the one case than in the other. The most that can be said for the rule that stock dividends are part of the capital is that it is a rule of convenience, that it furnishes an easy method for the administration of the trust estates by the trustee, but it entirely disregards the interest of the life tenant, and may in this case deprive him of the means of support provided for him by his ancestor.

JUDGE WILLIAMS joins in this dissent.